Tamera and Chaddwic **SMITH**,
**Plaintiffs/Petitioners**,

v.

**OAKLAND COUNTY CIRCUIT COURT;** Hon. **Elizabeth M. Pezzetti;** Hon. **Martha D. Anderson;** Clinton County Circuit Court; Hon. **Lisa Sullivan;** Donna & Jonathan Cromwell, Defendants/Respondents.

No. 03–74213.

United States District Court, E.D. Michigan, Southern Division.

Nov. 10, 2004.

Kenneth A. Birch, White, Schneider, Okemos, MI, Stuart R. Shafer, Lansing, MI, John E.S. Scott, Dickinson Wright, Detroit, MI, for Plaintiffs.

Steven M. Potter, Potter, Deagostino, Auburn Hills, MI, Keith J. Lerminiaux, Oakland County Corporation Counsel, Pontiac, MI, John F. Mills, Williams, Williams, Birmingham, MI, Michael G. Woodworth, Johanna C. Carey, Hubbard, Fox, Erica W. Marsden, MI Department of Attorney General (Social Services) Social Services, Lansing, MI, Monica F. Linkner, Lopatin, Miller, Southfield, MI, for Defendants.

**OPINION AND ORDER (1) GRANTING DEFENDANT OAKLAND COUNTY CIRCUIT COURT'S MOTION TO DISMISS; (2) GRANTING DEFENDANT HON. MARTHA D. ANDERSON'S MOTION TO DISMISS; (3) DENYING DEFENDANT HON. ELIZABETH M. PEZZETTI'S MOTION TO DISMISS; (4) GRANTING DEFENDANT CLINTON COUNTY CIRCUIT COURT'S MOTION TO DISMISS; (5) DENYING DEFENDANT HON. LISA SULLIVAN'S (VICE HON. MARVIN ROBERTSON) MOTION TO DISMISS; AND (6) DENYING DEFENDANTS JONATHAN AND DONNA CROMWELL'S MOTION TO DISMISS**

BORMAN, District Judge.

### INTRODUCTION

Before the Court are Defendants' Motions to Dismiss Plaintiffs Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12. This case revolves around two minor children, sisters, Liliandra Amethest Dawne Holey, birth date August 29, 2001 and Pearl Patrice Holey, birth date August 10, 2002, who both became available for adoption due to tragic events that ensued in their biological family.

This case also involves two families, the Tamera and Chaddwic Smith Family of Clinton County ("Smith Plaintiffs"), and the Donna and Jonathan Cromwell Family of Oakland County ("Cromwell Defendants"), both which are seeking to adopt these two children.

On March 17, 2003, Clinton County Family Court Judge Marvin Robertson issued orders of adoption of the two children by the Smiths—which orders were subsequently revoked by a combination of two court orders, both of which were issued

without notice to the childrens' then-parents the Smith Plaintiffs. The first order was issued on April 12, 2003 by Oakland County Family Court Judge Elizabeth Pezzetti, the second, on April 17, 2003, by Clinton County Judge Robertson, who had ordered the adoptions one month earlier. There has never been any allegation that the Smiths were unfit parents. The two children presently reside with the Cromwells in Oakland County. The children have been shuttled around the State of Michigan by state court judges, from one county to another, and from the Smith family to the Cromwell family, without the children receiving any legal representation—no one has been in court to represent the best interests of the children.

The Michigan Family Independence Agency (FIA), the State agency charged with representing the best interests of these children, having had notice of critical proceedings in their lives, has been noticeably and purposely absent from significant state court hearings. The children have been in multiple family settings, and have had multiple sets of legal names in the space of a few years. Only recently, has the present court in control of the children, Oakland Circuit, appointed a Guardian Ad Litem ("GAL") to represent the children in *future* court proceedings, proceedings which post-date the issues raised in this case.

This case was brought by the Smith family, who legally adopted the two children in March, 2003, and, who, as legal parents, one month later, had their children taken away from them without notice and without an opportunity to participate in the legal proceedings held in two separate Michigan state circuit family courts, Clinton County and Oakland County.

The Michigan Adoption Code states in M.C.L.A. § 710.60:

(1) After the entry of the order of adoption, the adoptee shall, in case of a change of name, be known and called by the new name. The person or persons adopting the adoptee then stands in the place of a parent or parents to the adoptee in law in all respects as though the adopted person had been born to the adopting parents and are liable for all the duties and entitled to all the rights of parents.

(2) After the entry of the order of adoption there is no distinction between the rights and duties of natural progeny and adopted person . . .

## I. Factual Background Regarding the Two Children, and Factual and Procedural History in the State Court System

On August 29, 2001, Liliandra Amethest Dawne Holey was born to Patrick and Jennifer Holey. In early April, 2002, Patrick and Jennifer Holey were prosecuted in Ingham County, Michigan for criminal sexual conduct involving a fourteen year-old girl. Shortly thereafter, the FIA instituted a child protective proceeding in Ingham County Circuit Court Family Division, and on April 9, 2002, the state took Liliandra into protective custody. Attorney Kenneth Birch represented Liliandra at those proceedings. Liliandra was then placed in foster care with Tamera and Chaddwic Smith ("Smith Plaintiffs") in Clinton County on April 10, 2002. On April 11, 2002, Liliandra's parents, Patrick and Jennifer Holey both attempted to commit suicide; Patrick died, but Jennifer survived.

The FIA subsequently initiated a neglect case against Jennifer Holey in Ingham County Circuit Court, that was assigned to Judge Paula Manderfield. While the neglect case was pending, Jennifer Holey was convicted in the Ingham County Circuit Court of criminal sexual conduct and sentenced to four to fifteen years in

prison. Specifically, Ms. Holey pled no contest to Criminal Sexual Conduct, Third Degree.

On May 13, 2002, the Cromwell Defendants filed a Petition for Direct Placement Adoption of Liliandra with the Oakland County Family Court's Adoption Services Department.

On May 15, 2002, the Oakland County Family Court's Adoption Services Department sent a notice of prior court proceedings affecting minor(s) (Liliandra) to the Ingham County Family Court. (Pezzetti Opinion June 12, 2003, P.7)

On August 10, 2002, while in prison, Jennifer Holey gave birth to a second child, Pearl Patrice Holey. On August 13, 2002, the FIA placed Pearl in foster care, also with the Smith Plaintiffs' family in Clinton County.

On August 15, 2002, the Cromwell Defendants filed a petition for direct placement adoption as to Pearl with the Oakland County Family Court's Adoption Services Department. That Court sent a notice of prior court proceedings affecting Liliandra to the Ingham County Family Court. (Pezzetti Opinion June 12, 2003 P. 7).

Thus, while the neglect case was pending against Jennifer Holey in Ingham County, the Cromwells ("Cromwell Defendants"), relatives of Jennifer Holey by the sixth degree of consanguinity [1], filed petitions in Oakland County Circuit Court—Family Division to adopt both Liliandra and Pearl. Mrs. Cromwell is a first cousin to the maternal grandmother of the children. That case was assigned to Oakland County Family Court Judge Elizabeth Pezzetti.

Pleadings filed in the Ingham County neglect case by the Cromwell Defendants noted the Oakland County adoption petitions, as does the transcript of the Ingham County hearing. Attached to those Ingham County pleadings was a signed consent by Jennifer Holey to the termination of her parental rights for purposes of adoption of both children by the Cromwell Defendants. However, Ingham County Judge Paula Manderfield refused to permit Jennifer Holey to voluntarily terminate her parental rights in favor of the Cromwells, and proceeded with the neglect hearing.

On September 6, 2002, Judge Manderfield held a bench trial regarding jurisdiction and guardianship of the two children under the juvenile code. Attorney appearances at the proceeding included Kenneth Birch, counsel for the children, Roderick Porter, counsel for the mother Jennifer Holey, and John F. Mills and James J. Williams as co-counsel for the intervenors Donna and Jonathan Cromwell. Also present was Stuart Shafer, counsel for the foster parents, the Smiths. Transcript, Ingham County Hearing, Sept. 5, 2002, p. 3.

Porter, counsel for Jennifer Holey, noted on the record, preference for a direct consent adoption by the Cromwells. *Id.* at P.12.

Mills, counsel for the Cromwells, stated that he had filed motions for the immediate transfer of both children to the Cromwells based on Jennifer Holey's consent pursuant to the Adoption Code. Mills challenged as improper, Judge Manderfield's termination of Jennifer Holey's consent under the Juvenile Code. Mills stated that

---

1. Michigan adoption law only provides familial preference for relatives up to the fifth degree of consanguinity. "Adopting a Child in Michigan", State of Michigan Family Independence Agency, Definitions, P. 10:

B. 11. Relative–A person related to the adoptee within the fifth degree by marriage, blood or adoption.

the hearing should have been governed by the Adoption Code. Ingham County Hearing, P.15.

Williams, co-counsel for the Cromwells stated that the Court should consider the fact that an adoption petition had been filed, in Oakland County where the Cromwells reside, on May 13, 2002, for Liliandra, and more recently, for Pearl. *Id.* at 18. Jennifer Holey had signed consents on August 14, 2002, on behalf of the Cromwells adoption of the children.

Assistant Prosecutor John Dewane, representing the People of the State of Michigan, noted for the record:

I know Mr. Mills and Mr. Williams are preserving their right to appeal, but there has been no proofs otherwise that it's not in the best interest to terminate the mother's rights.

*Id.* at 21.

Judge Manderfield concluded, for the purpose of that hearing, that the juvenile statutes took priority over guardianship or consent adoption statutes. *Id.* at 22.

Mr. Mills also noted the possibility of an appeal by the Cromwells:

Your Honor, on behalf of my client, and certainly without prejudice to any appellate rights they may have, and I'm not sure they have any.

*Id.* at 31. Mills and Williams, co-counsel for the Cromwells, did not appeal Judge Manderfield's ruling.

Mills and Schafer, counsel for the Cromwells and the Smiths, respectively, both noted on the record that their clients had been discussing a solution wherein each family would adopt one of the children. *Id.* at 31–32. At the same time, Mills noted that the Court was "well aware both sets of competing parents were very adamant in wanting both children." The FIA, which did take part in this proceeding, through Prosecutor Dewane, stated an objection to splitting up the two children: "I

don't believe that's in their best interest." *Id.* at 32. Judge Manderfield responded: "Well, I'm not splitting them up." *Id.* at 32. That hearing marked the first time that the Cromwells had met either child:

*Mr. Mills:* Mr. and Mrs. Cromwell have never had an opportunity to meet either children. May they have the opportunity to visit with the children. . . .

*Id.* at 32. Judge Manderfield permitted a visit. *Id.*

Judge Manderfield ruled on September 13, 2002, to involuntarily terminate Jennifer Holey's parental rights, and to commit the two minor children to the jurisdiction of the Michigan Children's Institute ("MCI"), a division of the FIA, for adoptive planning, supervision, care and placement. Judge Manderfield informed Jennifer Holey of her right to appeal. *Id.* at 28. Jennifer Holey did not appeal. The Cromwells did not seek to appeal or otherwise challenge Manderfield's ruling. It is not clear whether or not they had a right to appeal that ruling.

On December 5, 2002, after evaluating the competing requests for the two Holey children by the Smiths and the Cromwells, the MCI, through William J. Johnson its Superintendent, issued a three page single spaced Consent to Adoption Decision in favor of the Smith Plaintiffs. Johnson noted that he "had the opportunity to meet directly with each family to discuss their concerns and their reasons for wanting to adopt the children." MCI Consent to Adoption Decision, Dec. 5, 2002. P.3.

Copies of the MCI decision were provided to the Smiths and the Cromwells, and to Kenneth Birch, the Legal Guardian Ad Litem for the children.

On December 11, 2002, the Smith Plaintiffs filed for adoption of the children in the Clinton County Circuit Court—Family Division. On December 13, 2002, Clinton

County Circuit Court Family Division Judge Marvin Robertson entered an order placing the children with the Smith Plaintiffs.

On January 31, 2003, the Cromwell Defendants filed a motion in Oakland County Circuit Court for a "Section 45"[2] hearing under the Adoption Code, challenging the MCI consent-to-adopt decision that had approved the Smiths' adoption, and had rejected the Cromwells.

On February 6, 2003, the Oakland County Circuit Court, Family Division mailed to the Clerk of the Clinton County Court a "notice of Prior Court of Proceedings Affecting Minors" as to each child, Liliandra and Pearl. Significantly, the notice document stated in the space for listing "name(s) of parents(s)/ plaintiff/defendant:"

Jennifer Patricia Holey

Patrick Holey

Chaddwic and Tamera Smith

Thus the Oakland County Circuit Court Family Division notice recognized the Smiths' importance and/involvement in the legal proceedings regarding the two children, but did not send a copy of the notice to the Smiths, the then foster parents of the two children.

The notice stated:

A complaint/petition/motion was filed with this court which affects *the above named minor(s) who are subject to the continuing jurisdiction of your court.* A hearing on the complaint/petition/motion is scheduled for

That portion of notice stated:

<u>No Scheduled Date</u>

DATE

(Emphasis added) Thus, the Oakland County Notice recognized that the two children were "subject to the continuing jurisdiction of" the Clinton County Court, and therefore not subject to the jurisdiction of the Oakland County Circuit Court. Further, the notice did not set a date for a hearing on the matter.

On March 17, 2003, Clinton County Judge Marvin Robertson entered final orders of adoption of both children by the Smith Plaintiffs, thereby making the Smiths their legal parents. The adoption orders legally changed the names of the children to Victoria Lili Smith, and Elizabeth Ann Smith. Accordingly, on March 17, 2003, the Smith family, pursuant to the laws of the State of Michigan, included the two young girls.[3]

On April 1, 2003, Judge Pezzetti held a pre-trial conference on the Cromwell's Section 45 motion. Present were the Cromwells attorneys Ms. Lauren Howard, Director of Oakland County Court Adoption Services, and Musette Michael, Di-

**2.** A "Section 45" motion, pursuant to M.C.L. § 710.45, is the method by which a person who has been denied consent to adopt may challenge that decision. The Petitioner's motion must allege that the decision to withhold consent was arbitrary and capricious. A "Section 45" motion must be brought within fifty-six days of the entry of the consent decision. In the instant case, the Cromwell Section 45 motion was timely. The standard of review the Court must apply is that unless the Petitioner establishes by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious, the Court must deny the motion. MCL § 710.45(5).

The instant Section 45 Motion was filed in Oakland County, the Cromwells' County of residence, not in Ingham County where the MCI consent to adopt had been issued, and not in Clinton County where the children resided with the Smiths. There was no impropriety in the Cromwells' filing the Section 45 Motion in Oakland County, their county of residence.

**3.** M.C.L.A. 710.60, set forth *supra* at p. 1035, states that after the entry of the order of adoption, the adopting persons become the parents of the adoptees in all respects, as though the adoptees had been born to the adopting parents.

rector of the Bureau of Legal Affairs for the FIA. Michael reiterated the FIA's position, set forth in her March 21, 2003 correspondence referred to in the Court's subsequent Opinion of April 15, 2003, that no one would appear at the court hearing to represent the FIA or the MCI.

On April 4, 2003, Oakland County Circuit Judge Pezzetti, pursuant to the petition filed by the Cromwells, conducted the aforementioned Section 45 hearing challenging the decision of the MCI Director awarding custody to the Smiths. On this date, the Smiths were the legal parents of the two girls.

As noted before, although the FIA was provided notice of the Oakland County Section 45 hearing challenging the decision of its MCI Director as being arbitrary and capricious, the FIA, after phone conversations with counsel for the Cromwells, and possibly other individuals, and after attending the pretrial hearing as a non-attorney representative, chose not to attend the court proceeding, and even more important, informed the Court that it did not support the decision of the MCI Director granting custody of the children to the Smiths. Specifically, the FIA informed the Court and/or the Cromwells that it did not support the MCI Director's decision.

Evidentiary exhibits presented to this Court by the Federal Court Appointed Guardian Ad Litem, John E.S. Scott, includes a February 18, 2003, memorandum from MCI Superintendent Johnson to Musette Michael, Director of Legal Affairs of The Family Independence Agency, regarding the "Adoption of Liliandra and Pearl Holey." Third Party Plaintiff Exh. 22. In the memorandum, Johnson notes that he had previously forwarded to Michael a copy of a brief filed by Cromwell attorney Sherrie C. Ross in the Oakland County Section 45 motion, along with his request for representation from the Attorney General's office. Johnson notes that Michael's

response was that the FIA will refuse to request representation from the AG in this matter. In the February 18th memorandum, Johnson requests that Michael's decision to not request AG representation be reviewed in light of Ross' most recent brief in this matter, which makes serious allegations about Johnson's conduct as the FIA's authorized representative for making adoption decisions. Johnson's memorandum then lists Ross' allegations:

- Violating state law and FIA policy
- Stealing babies
- Selling babies
- Development of a "black market" for babies
- Licensing friends for placement of babies
- "Stalling" making of a decision in this matter
- Making a decision about adoptive placement prior to termination of parental rights of the children

Johnson concluded, that given these "very serious allegations about my conduct in my fulfillment of my duties as the former MCI Superintendent" as he carried out his duties "as the designated representative of FIA to make decisions about adoption of children," the AG should represent the MCI and him in this matter.

On February 19, 2003, Musette Michael responded to him:

We requested Attorney General representation, but later withdrew our request .... [W]e decided not to defend the consent decision because Director Bowler does not agree with the decision insofar as it denies consent to the Cromwells to adopt the children. There is an April 1, 2003 pre-trial conference in front of Judge Elizabeth Pezetti (sic) that I will attend as a *non-attorney representative* of the FIA.

(Third Party Plaintiff Exh. 21) (emphasis added).

Thereafter, Director of FIA Legal Affairs Michael sent a letter to Mr. Williams, one of the Cromwell's attorneys, indicating that she had engaged in discussions with him regarding the Cromwells Section 45 Motion alleging that her colleague/client MCI Superintendent Johnson had "arbitrarily and capriciously withheld" consent to the Cromwells petition to adopt Liliandra and Pearl, and that the FIA didn't oppose the Cromwells request for relief. The letter to Mr. Williams stated in pertinent part:

This is to confirm our discussions regarding the "Motion to Determine that the Withholding of Consent to Adopt Liliandra Holey and Pearl Holey was Arbitrary and Capriciously Withheld" filed under M.C.L. 710.45 in Oakland County Circuit Court by Petitioners Donna and Jonathan Cromwell. As I have previously indicated, the Family Independence Agency (FIA) does not oppose the relief ... except insofar as it requests payments of the Petitioners' attorney fees in paragraph 3. Moreover, the FIA does not intend to defend the December 5, 2002 "Consent to Adoption Decision" issued by the then-Michigan Children's Institute Superintendent William J. Johnson.

Third Party Plaintiffs Exh. 23.

Accordingly, not only did no one from the state appear to represent the children, but the state sided with the Cromwells and encouraged the Judge to overturn the MCI decision, apparently because then FIA Director Nanette Bowler disagreed with the Johnson decision. Nothing in the letter states or implies that Bowler found Johnson's decision to be "arbitrary and capricious," the legal standard required for overturning such a decision.

Failure of the FIA to appear at the hearing was a factor to which Judge Pez-zetti gave significant weight in reaching her decision on April 15, 2004, Page 50–51:

[T]he Court would like to highlight a few things to which the Court gave significant weight in making this decision.

First, the Court would again mention the fact that no one appeared on behalf of the FIA or Mr. Johnson to defend his decision to deny consent to Petitioners. Not only did no one appear ... but this Court's file contains a letter ... from Musette Michael, Director, Bureau of Legal Affairs for the FIA, which unambiguously states "the FIA does not oppose the relief requested by Petitioners except ... Petitioners' attorney fees .... the FIA does not intend to defend the December 5, 2002 'Consent to Adoption Decision' issued by ... Johnson." Keeping in mind that the MCI is a division of the FIA, this Court gave the FIA's decision not to oppose the relief requested and not to defend Mr. Johnson's decision considerable weight in making its decision.

No GAL was appointed by Judge Pez-zetti to represent the children at the Rule 45 hearing. The FIA did not appear. No one was present to represent the interests of the Smiths, the then-legal parents of the two minor children. The only party represented at the hearing was the petitioning Cromwells. The only testimony at the hearing came from parties called by the Cromwells. The Cromwells were victorious.

After the hearing, Oakland County Circuit Judge Pezzetti, issued an Order on April 15, 2004, finding by clear and convincing evidence, that the MCI Director's withholding of consent to adopt by the Cromwell Defendants, was arbitrary and capricious. Judge Pezzetti's Opinion concluded with the following orders:

A. That the final order of adoption of Liliandra and Pearl to Mr. and Mrs.

Smith entered March 13, 2003 be immediately set aside;

B. That this Court takes permanent custody and assumes jurisdiction over Liliandra and Pearl effective immediately;

C. That the involvement of LAS [Lutheran Adoption Services] and LSSM [Lutheran Social Services of Michigan] with this case and with Liliandra and Pearl is terminated;

D. That Mr. Johnson's Consent to Adoption Decision is set aside and the jurisdiction of MCI remains terminated;

E. That this Court's Adoption Services Department shall take immediate steps to arrange for the transition of Liliandra and Pearl from Mr. and Mrs. Smith to [the Cromwells];

F. That this Court will sign a final order of adoption of Liliandra and Pearl to [the Cromwells] as soon as one is prepared and presented to this Court by the Adoption Services Department.

(April 7, 2003 Opinion and Order).

Thus, Judge Pezzetti, an Oakland County Circuit Judge of comparable stature as Clinton County Circuit Judge Robertson, whose Oakland County Adoption Services Agency had acknowledged that the children were under the continuing jurisdiction of Clinton County, ordered that Judge Robertson's orders of adoption be immediately set aside, assumed "permanent custody" and "jurisdiction" over the children then living in Clinton County, ordered the children transitioned/transferred to Oak-

land County, and then finally, Judge Pezzetti committed to, in the future, without even indicating a need to hold a hearing, to sign an order of adoption by the Cromwells who had not yet even had custody of the two children for one day.[4]

Oakland County Judge Pezzetti's decision was communicated to Clinton County Judge Robertson on April 7, 2003. Evidence of the specific method of communication, and the specific communicator has not been provided to this Court.

On April 17, 2003, Clinton County Judge Robertson, without providing notice to the Smiths, whom he had legally made parents of the children one month previous, and without holding a hearing, *sua sponte* issued an Opinion and Order Setting Aside his Orders of Adoption. The two Smith girls, whom Judge Robertson in legally sanctioning their adoption by the Smiths the previous month, had also legally changed their names to Victoria Lili Smith and Elizabeth Ann Smith, were thus stripped of their parents and their names without any notice/hearing or legal representation.

Judge Robertson's April 17, 2003 Opinion and Order began:

This matter comes before us pursuant to the order of the Oakland County Circuit Court dated April 15, 2003, wherein the Honorable Elizabeth Pezetti (sic) ordered that "the final order [adoption] Liliandra and Pearl to Mr. and Mrs. Smith entered on March 13, 2003 be immediately set aside." Judge Pezetti's (sic) detailed Opinion and Order are

---

4. In response to the perceived failure of the state adoption system as to the Smiths and the Cromwells, state legislation was introduced that requires the appearance of a Guardian ad Litem or an Attorney at a Section 45 hearing. See House Bill Nos. 6008 and 6010. Interestingly, the Bills' legislative analysis, states "it is not entirely clear how

the Oakland County court was permitted to vacate the adoption order of the Clinton County court, and terminate the rights of the Smiths. Section 45 does not permit the court to terminate the parental rights of the parents granted such rights under a prior court order." (House Bills Nos. 6008 and 6010, First Legislative Analysis, pg. 7 (Mich.2004)).

deemed incorporated into this writing, as this court grants comity and effect to the proper exercise of jurisdiction of our Michigan sister courts. Accordingly, the adoptions are set aside.

Thus, even though the children were residing in Clinton County with their parents, and even though the Oakland County Notice of its court proceeding recognized that the two children were "subject to the continuing jurisdiction of Judge Robertson's court", Judge Robertson's opinion assumed Oakland County had jurisdiction.

Judge Robertson's order then recited that in granting the March adoptions he had relied on the Final Adoption Supervising Summary filed by Lutheran Adoption Services recommending "the finalization of the adoption of Lili and Pearl by Chadd and Tamera Smith." Judge Robertson then stated:

> However, through inadvertence we failed to give due consideration to a prior notice from the Oakland County Circuit Court of a "Section 45 Motion—Adoption Code." This notice was filed here on February 10, 2003.

Again, this Court must note that Oakland County notice had indicated that the Clinton County Court had continuing jurisdiction of the children. Judge Robertson then proceeded to discuss the findings of Oakland County Circuit Judge Pezzetti, and concluded:

> Consistent with the exercise of jurisdiction by the Oakland County Circuit Court, under the above statutes, and to give effect to the order of that court which directs that the adoption be set aside, IT IS ORDERED that the orders of adoption entered by this court in regard to the above minors are set aside. This Court does not retain jurisdiction, as the Oakland County Circuit Court

has taken "permanent custody and assumes jurisdiction over Liliandra and Pearl effective immediately."

One day later, April 18, 2003, Judge Robertson issued a corrected opinion and order which added the following language (underlined)

1. The heading now read *Corrected Opinion and Order Setting Aside Orders of Adoption Pursuant to MCR 2.612.*
2. Whereas the initial order described Judge Robertson as "Judge of Probate", the corrected order described him as *"Presiding Judge, Family Division."*
3. On the final page where the word "dated" appears, the initial order stated "April 17, 2003," the corrected order states *"April 18, 2003 nunc pro tunc April 17, 2003."* [5]
4. On the final page, Judge Robertson's description of his position conforms to # 2 above.

Judge Robertson's Orders setting aside the Orders of Adoption referred to the children by their birth names, not their adoptive names that he had ordered one month previous.

On April 21, 2003, Oakland County Judge Elizabeth Pezzetti issued an "Order Placing Child After Consent" as to both children, Liliandra and Pearl, pursuant to a petition for adoption, with the Cromwells.

On May 1, 2003, the Smith Plaintiffs moved for Stay of the Proceedings to Enforce Judgment and Motion for Reconsideration of Judge Robertson's April 17, 2003 Order(s). On May 6, 2003, Judge Robertson, again without holding a hearing, denied the motion for reconsideration. Essentially, Judge Robertson's Opinion and Order Denying Motions stated that his

---

**5.** "Nunc pro tunc signifies now for then, or, in other words, a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done." Black's Law Dictionary, 6th Ed.1990.

April 17, 2003 Order deferred to the jurisdiction of the Oakland County Court, and transferred jurisdiction to that court which had taken permanent custody and assumed jurisdiction over the child on April 15, 2003. His opinion never discussed how Oakland County, which had acknowledged that Clinton County had continuing jurisdiction over the children, could assume jurisdiction over them and take them from their Clinton County parents to Oakland County.

Judge Robertson stated that the Smiths were requesting him to determine that the Oakland County Circuit Court had made erroneous findings of fact and conclusions of law, thereby requiring him to act as "a *quasi* appellate court." Judge Robertson denied the motions and reaffirmed his order of April 17, 2003.

The Smith Plaintiffs filed appeals to the Michigan Court of Appeals, challenging both the Oakland County and Clinton County orders. These challenges were unsuccessful.

As to the Smith Plaintiffs May 7, 2003 appeal of Judge Robertson's order setting aside the order of adoption in the Clinton County proceeding. Michigan Court of Appeals dismissed the appeal for lack of jurisdiction due to the fact that no final order had been entered:

> The April 17, 2003 order, which vacated an earlier order of adoption and then abdicated jurisdiction to the family division of Oakland Circuit Court, did not determine the ultimate issue of adoption of the two children. Even though Oakland Circuit Court has indicated a future intent regarding adoption, no final order of adoption has actually been entered. The Clinton County circuit court order is akin to an order changing venue, which is not a final order under M.C.R. 7.202(7)(a)(i).

(Michigan Court of Appeals May 12, 2003 Order, Defendant Clinton County Motion, Ex. 2).

Thus, the Michigan Court of Appeals completely ignored the reality, that Judge Robertson had three weeks before determined "the ultimate issue of adoption of the two children," sidestepped the legal challenge to Robertson's subsequent order undoing that adoption, and instead focused on the portion of that order abdicating "jurisdiction to the family division of the Oakland Circuit Court," and then termed the entire Robertson order as "akin to an order changing venue. . . ."

On May 20, 2003, the Smith Plaintiffs filed a petition for superintending control over Defendant Oakland County Court with the Michigan Court of Appeals. On June 10, 2003, the Court of Appeals dismissed the petition for lack of merit in the grounds presented: "The Court orders that the complaint for superintending control is DENIED." (Michigan Court of Appeals June 10, 2003 Order).

Attorney Kenneth Birch, who had previously been appointed Guardian ad Litem ("State GAL") in the earlier Ingham County Circuit Court matter, filed a motion with the Michigan Court of Appeals seeking leave to file an appearance as GAL on behalf of the children in conjunction with Petitioners' complaint for superintending control in that Court. On June 10, 2003, the Court of Appeals, in denying the petition for superintending control, granted Birch's motion.

On July 2, 2003, the Smith Plaintiffs filed a delayed application for leave to appeal to the Michigan Supreme Court, challenging the Court of Appeals' dismissal of the petition for superintending control.

On July 27, 2003, the application for leave to appeal was denied by the Michigan Supreme Court. The Smith Plaintiffs filed a motion for reconsideration with the

Michigan Supreme Court. On October 17, 2003, the motion for reconsideration was denied.

In the meantime, the Smith Plaintiffs petitioned for a hearing in the Oakland County Court. On June 12, 2003, after accepting the Smith Plaintiffs' brief on the issue of standing in their quest for a hearing in an Oakland County Court, Oakland County Judge Pezzetti, without oral argument, issued an opinion and order holding that the Smith Plaintiffs, the legal parents of the two girls on April 4, 2003, the time of the Rule 45 Petition Hearing in her court, were not entitled to notice of the April 4, 2003 hearing as "interested party".[6] The Court rejected the Smiths' argument that as legal parents of the children on June 4, 2003, they were entitled to notice and to participate. Judge Pezzetti rejected the Smiths' claim, finding that Judge Robertson's orders of adoption "were premature and erroneous." P.15.

Judge Pezzetti found that the Cromwell's petition for a Section 45 hearing in Oakland County "was a form of 'appeal' under the Adoption Code" from the MCI Superintendent's decision rejecting their consent to adopt the girls. Pezzetti Opinion, June 12 2003, P.17.

Judge Pezzetti cited to the Michigan Supreme Court decision in *In re JK*, 468 Mich. 202, 661 N.W.2d 216 (2003) which had reversed a trial court decision allowing foster parents to adopt the child while the birth parent had appealed to a higher court. Judge Pezzetti's opinion cited this language from *In re JK*:

> Parents whose rights have been terminated by the trial court are entitled to appellate review of this decision without that review being compromised by the specter of appellate courts having to undo an adoption as a concomitant act to the granting of relief for those parents. Such a result is simply contrary to the structure of the justice system established by our constitution and laws.

Pezzetti Opinion June 12, 2003, P.16, quoting *In re JK* at 217.

Thus, Judge Pezzetti found that the Cromwells' Section 45 motion was an appeal from the MCI decision, and that Judge Robertson prematurely finalized the adoption while an appeal was pending, so she "had no choice but to order that Judge Robertson set aside his final orders of adoption entered prematurely on March 13, 2003." *Id.* at 17.

This Court does not deal with Judge Pezzetti's decision, but rather with her refusal to provide notice to and a chance to be heard to the then parents, the Smiths.

Judge Pezzetti concluded:

> "Mr. and Mrs. Smith are not 'interested parties' as defined by the Adoption Code and pursuant to Michigan case law and finding that they lack standing in this case. Accordingly, the Court will not rule upon and dismisses the following motions filed by Mr. and Mrs. Smith due to lack of standing."

*Id.* at 21. The Court notes that M.C.L.A. 710.24(a)(1) states that adult parents are interested parties in a petition for adoption.

GAL Birch filed a motion to intervene on behalf of the children in the Oakland County proceeding, which Oakland County Circuit Judge Pezzetti denied on June 25, 2003.

On June 27, 2003, the Smith Plaintiffs appealed Judge Pezzetti's order. On July 22, 2003, the Michigan Court of Appeals dismissed the appeal for lack of jurisdic-

**6.** M.C.L.A. 710.24(a)(1) which sets forth the "interested parties in a petition for adoption," includes in subsection (c) "adult parent ... of an adoptee."

tion due to the absence of a final order of adoption:

> The claims of appeal are DISMISSED for lack of jurisdiction because the June 12, 2003 order, which denied appellants' motion to intervene on the ground that appellants lacked standing, is not a final order for the reason that the petitions for adoption are still outstanding. See MCR 7.202(7)(a)(i) and 7.203(A)(1). As a result, appellants may only challenge the order at this time by filing a delayed application for leave to appeal under MCR 7.205. See MCR 7.203(B)(1).

(Michigan Court of Appeals July 22, 2003 Order). Thus, the Michigan Court of Appeals order held that the Smiths, the adoptive parents of the two children, who then had their parentage undone and their children removed from their family without a hearing, must wait for another family to adopt their children before they can challenge any court orders imploding their family.

On July 9, 2003, State GAL Birch appealed the denial of his motion to intervene by the Oakland County Court to the Michigan Court of Appeals. On August 15, 2003, the Court of Appeals dismissed the appeal for lack of jurisdiction due to the absence of a final order in the Oakland County adoption proceeding:

> The claims of appeal are DISMISSED for lack of jurisdiction because the June 25, 2003 order denying the guardian as litem's motion to intervene is not a final order for the reason that the petitions for adoption are still outstanding. See MCR 7.202(7)(a)(i) and 7.203(A)(1). As a result, appellant may only challenge the order at this time by filing a delayed application for leave to appeal under MCR 7.205. See MCR 7.203(B)(1).

(Michigan Court of Appeals August 15, 2003 Order).

The Smith Plaintiffs filed an interlocutory appeal of Judge Pezzetti's orders of April 15, 2003, April 21, 2003, June 12, 2003, and July 28, 2003. On November 14, 2003, the Michigan Court of Appeals denied the delayed appeal for lack of merit in the grounds presented:

> The Court orders that the motion for immediate consideration is GRANTED.
>
> The Court orders that the delayed application for leave to appeal is DENIED for lack of merit in the grounds presented.
>
> The Court orders that the motions to dismiss and for sanctions are DENIED.

(Michigan Court of Appeals November 14, 2003 Order).

On November 17, 2003, the Smith Plaintiffs filed a motion for rehearing in the Court of Appeals, which was denied on December 12, 2003. On January 5, 2004, the Smith Plaintiffs filed an application for leave to appeal to the Michigan Supreme Court. On March 26, 2004, the application was denied.

Oakland County Circuit Judge Pezzetti has recently appointed a Guardian Ad Litem to represent the interests of the two young children in the Oakland County Court proceedings per statements on the record from counsel for Judge Pezzetti. August, 19, 2004, Hearing Transcript, pg. 26.

Judge Pezzetti has indicated that she will not finalize adoption proceedings involving the instant two minor children until the conclusion of these federal proceedings. *Id* at 60.

On July 8, 2003, the Smiths filed in Oakland County Circuit Court the following pleadings:

● Petitions for Adoption

● Motions to Determine whether Denial of Consent to Adopt was Arbitrary and Capricious

- Petitions to Determine Custody of Child Temporarily Placed for Adoption

On July 21, 2003, the Smiths filed a Motion in Oakland County Circuit Court for Appointment of Attorney–Guardian Ad Litem for the children.

These cases were assigned to Oakland County Circuit Family Court Judge Martha D. Anderson. On July 28, 2003, Judge Anderson, without oral argument, dismissed these petitions/motions.[7]

Judge Anderson found:

1. That the December 5, 2002 consents to adopt by the MCI in favor of the Smiths had been set aside by Judge Pezetti's April 15, 2003 Opinion and Order, and thus were invalid.

2. That the motions to determine that Judge Pezzetti's ruling was arbitrary and capricious were beyond a 56 day time period in MCL 710.115(3), and thus not timely.

3. That the petitions regarding custody of a child temporarily placed for adoption was inapplicable to the instant situation because petitioners relied on MCL 710.23d rather than MCL 710.45(g) which was relevant to the instant situation.

Thus, Oakland County Circuit Judge Martha Anderson did not hold a hearing and did not grant the motions. On August 11, 2003, Judge Anderson denied Petitioner Smiths' Motion for Rehearing filed August 1, 2003.

## II. Procedural History in Federal Court

On October 21, 2003, the Smith Plaintiffs filed an "Emergency Application for Writ of Habeas Corpus" in both the United States District Courts for the Eastern District of Michigan (Borman, J.) and Western District of Michigan (McKeague, J.), naming as "Respondents" Oakland County Circuit Judge Elizabeth Pezzetti, Clinton County Circuit Judge Marvin Robertson, Oakland County Circuit Court, Clinton County Circuit Court, Jonathan and Donna Cromwell, and the Attorney General of the state of Michigan ("Attorney General").

On December 12, 2003, pursuant to Federal Rule of Civil Procedure 17(c), this Court entered an Order appointing Attorney John E.S. Scott as Guardian Ad Litem (GAL) "to represent the interests of the children in this case."

On December 12, 2003, United States District Judge David McKeague of the Western District of Michigan entered an Order Holding Proceedings in Abeyance.

On January 23, 2004, the Smith Plaintiffs filed a Motion for Leave to File First Amended Complaint. The Court granted the motion on February 3, 2004. The First Amended Complaint, named as Defendants Clinton County Circuit Court, Oakland County Circuit Court, Jonathan and Donna Cromwell, and the Attorney General of the State of Michigan.

On March 15, 2004, the Smith Plaintiffs filed a motion for leave to file a Second Amended Complaint.

On March 18, 2004, GAL Scott filed a motion to file Third–Party Complaint on behalf of the minor children.

On March 29, 2004, the Court entered an Order Dismissing Count IV of the First Amended Complaint (Habeas Corpus) and Dismissing as a Party State–Court appointed GAL Kenneth Birch, having appointed John E.S. Scott as Federal Court GAL.

---

**7.** Petitioners also filed a "Motion for Stay of Adoption Proceedings in Cromwells' Adoption of these Children." This motion was forwarded to Judge Pezzetti, per Judge Andersons' opinion of July 28, 2003.

On April 1, 2004, the Court entered an Order Granting GAL Scott's Motion to File Third–Party Complaint.

On April 6, 2004, the Court entered an Order Granting the Smith Plaintiffs Motion for Leave to File a Second Amended Complaint.

Given that the Second Amended Complaint superseded the First Amended Complaint, the Court, on April 7, 2004, entered an Order denying as moot the pending motions to dismiss the First Amended Complaint.

The Smith Plaintiffs Second Amended Complaint, the operative complaint with regard to the instant order, lists as Defendants Oakland County Circuit Court, Hon. Elizabeth M. Pezzetti, in both her Individual and Official Capacity; Hon. Martha D. Anderson, in both her Individual and Official Capacity; Clinton County Circuit Court, Hon. Marvin Robertson, in both his Individual and Official Capacity, and Donna and Jonathan Cromwell.

In the Second Amended Complaint, the Smith Plaintiffs request the following relief:

A. Entry of a declaratory judgment that Defendant Robertson's March 17, 2003 Orders of Adoption was [sic] the last valid order [sic].

B. Entry of a declaratory judgment that any and all orders subsequent to March 17, 2003, including, but not limited to, Defendant Pezzetti's April 15, April 21, and June 12, 2003 orders, Defendant Anderson's July 28, 2003 order, and Defendant Robertson's April 17 and 18, 2003 orders are void *ab initio*.

C. Entry of a declaratory judgment finding that MCL 710.24 and 710.45 are unconstitutional on their face and/or as applied in whole or in part.

D. Entry of a declaratory judgment finding that Plaintiffs and their children were deprived of their constitutional rights of due process and equal protection.

E. Entry of a declaratory judgment finding that Defendants violated Plaintiffs' and their children's constitutional rights of due process and equal protection.

F. Entry of an order returning the children to Plaintiffs.

G. Entry of an interim order permitting Plaintiffs regular and frequent visitation with their children until further order of this Court.

H. Entry of an order allowing GAL Birch access to the children.

I. Entry of an order staying all further state court proceedings in this case until further order of this Court.

J. Entry of an order awarding Plaintiffs their costs and attorney fees.

K. Entry of an order granting such other relief as this Court may deem just and equitable.

L. Issuance of a Certificate of Appealability pursuant to 28 U.S.C. 2253, if relief is denied.

(Second Amended Complaint, pp. 30–31).[8]

On May 20, 2004, pursuant to Federal Rule of Civil Procedure 12(c), Defendants Clinton County Court and Hon. Lisa Sullivan, filed a Motion to Dismiss the Second Amended Complaint, as did the Cromwell Defendants. On May 24, 2004, Defendants Oakland County Court, Hon. Elizabeth M. Pezzetti, and Hon. Martha D. Anderson filed a Motion to Dismiss the Second Amended Complaint. On June 14, 2004, the Smith Plaintiffs filed Responses to all

---

**8.** On May 12, 2004, the Court entered a stipulated order dismissing Oakland County Circuit Judges Pezzetti and Anderson, and Clinton County Judge Lisa Sullivan, in their individual capacity only.

motions. On August 19, 2004, the Court heard oral argument.

The Smith Plaintiffs "shotgun" 12 requests for relief in their Second Amended Complaint creates a very difficult task for this Court in ruling on the instant motions. At the same time, the Court notes that F.R.Civ.P. 8(a) states: "Relief in the alternative or of several different types may be demanded." In adjudicating a motion to dismiss, the Court must take the pleadings in the light most favorable to the non-moving party, to wit, the Smiths. As the United States Court of Appeals for the Sixth Circuit recently pointed out in *Sil-vernail v. County of Kent,* 385 F.3d 601 (6th Cir.2004):

> In conducting its review [of a motion to dismiss pursuant to Rule 12(b)(6)], the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief."

*Id.* at 604, n. 3 (citations omitted).

Defendants, collectively, argue that the Second Amended Complaint should be dismissed because: [9]

### 9. Defendant Oakland County

Defendant Oakland County argues:

(1) Plaintiffs' claim is barred by the 11th Amendment of the U.S. Constitution;

(2) Defendant Oakland County is not a "person" for purposes of 42 §§ 1983 and 1985;

(3) Plaintiffs' have failed to state a claim of relief under 42 § 1985;

(4) The Court lacks subject matter jurisdiction over this matter because of the Rooker–Feldman doctrine;

(5) The Court should abstain from exercising jurisdiction;

(6) Plaintiffs' have failed to state a claim upon which relief can be granted as to Habeas Corpus.

### Defendant Clinton County

Defendant Clinton County argues:

(1) Plaintiffs' claims are barred by the 11th Amendment of the U.S. Constitution;

(2) Plaintiffs' claims are barred by the doctrine of Judicial Immunity;

(3) The Court lacks jurisdiction to entertain this action because the matter does not arise under the United States Constitution Federal Law or Treaties;

(4) Foster parents have no constitutional rights to custody of the children under their care, and this Court has no jurisdiction to hear a child custody case involving foster parents under Federal Civil Rights Statutes;

(5) The Court is prohibited from deciding this case under the doctrine of abstention;

(6) The relief sought by Plaintiffs is barred by the Anti–Injunction Act because it is not expressly authorized by Congress, necessary in aid of its jurisdiction or needed to protect or effectuate a judgment of the Court;

(7) Any Conspiracy alleged by Plaintiffs with respect to Clinton County Circuit Court is without factual or legal basis.

### The Cromwell Defendants

The Cromwell Defendants argue:

(1) The former foster parents of Liliandra and Pearl Holey have no standing to bring an action in this Court on their own behalf or on behalf of the minor children, specifically the Cromwells argue:

(a) The Standing of the former foster parents was determined in State Court;

(b) The decision of the State Court regarding Standing of the former foster parents must be honored as *Res Judicata* by this Court under the *Rooker–Feldman* doctrine;

(c) Plaintiffs have no right to act on behalf of the children;

(d) Attorney Kenneth Birch has no Standing to represent the children in this action as their *Guardian ad Litem;*

(e) Former MCI Director Bill Johnson has no standing to appear or take any other action in this proceeding.

(2) The former foster parents of Liliandra and Pearl Holey have failed to properly invoke jurisdiction of this Court, specifically:

(a) Plaintiffs have failed to plead Civil Rights Jurisdiction under 28 U.S.C. § 1343;

(b) The Oakland County Circuit Court and the Clinton County Circuit Court are not "persons" within the meaning of 42 §§ 1983 and 1985;

(c) The Cromwells are not "State Actors" for purposes of a Civil Rights action;

A. The Court lacks subject matter jurisdiction over the complaint due to the *Rooker–Feldman* doctrine;

B. The Smith Plaintiffs lack standing to bring the current action;

C. Defendants are immune from suit based on the 11th Amendment to the United States Constitution;

D. The Court should abstain from exercising jurisdiction under the *Younger* doctrine;

E. Defendants are not "persons" for purposes of 42 U.S.C. § 1983;

F. The Second Amended Complaint is barred by the Anti–Injunction Act, 28 U.S.C. § 2283;

G. The Smith Plaintiffs can prove no set of facts on which they could prevail under 42 U.S.C. § 1985;

H. The Court has already ruled that habeas corpus is an inappropriate remedy under the circumstances.

## *ANALYSIS*

### A. Standard of Review

This action, as set forth in the Second Amended Complaint, has been brought under Title 42 U.S.C. §§ 1983 and 1985. Section 1983 states, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declar-

atory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1985 states, in pertinent part:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

The standard for reviewing the sufficiency of the allegations in a complaint for an action under these sections was noted in *Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 497 (6th Cir.1991), quoting *Jones v. Duncan*, 840 F.2d 359, 361 (6th Cir.1988).

[d]ismissals of complaints under the civil rights statutes are scrutinized with special care. A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. Rule 8(a)(2) simply requires 'a short and plain statement of the claim showing that the pleader is entitled to relief...' Fed.R.Civ.P. 8(a)(2). All a complaint need do is afford the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' [cites omitted]. A motion to dismiss under

(d) Plaintiffs have failed to properly plead a "Conspiracy" under 42 § 1985.

Rule 12(b)(6) should not be granted 'unless *it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.*' [citations omitted]. [emphasis added].

## B. Standing

Standing is the "threshold question in every federal case." *Grendell v. Ohio Supreme Court,* 252 F.3d 828, 832 (6th Cir.2001)(quoting *Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir. 1999)). In order to satisfy Article III's standing requirements, a plaintiff (1) must have suffered some actual or threatened injury due to the alleged illegal conduct (the "injury in fact element"); (2) the injury must be fairly traceable to the challenged action (the "causation element"); and (3) there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury (the "redressability element"). *Id.*

Defendants have argued that the Smith Plaintiffs do not have standing in this case for two reasons: (1) The Cromwell Defendants argue that Judge Pezzetti ruled, after receiving briefing from the Cromwell Defendants and the Smith Plaintiffs, that Smith Plaintiffs had no standing in the Oakland County proceeding, and that this decision precludes, by way of collateral estoppel, the Smith Plaintiffs from having standing in this Court; and (2) Defendants argue that the Smith Plaintiffs have no standing to assert the rights of the children because they were never granted by a court or agency a relationship which would permit them to do so.

### 1. Effect of Judge Pezzetti's Rulings

■ The preclusive effect of a state court judgment is determined by that state's law. *Peterson Novelties, Inc. v. City of Berkley,* 305 F.3d 386, 394 (6th Cir.2002)(citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81,

104 S.Ct. 892, 79 L.Ed.2d 56 (1984)("a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.")). Under Michigan law, issue preclusion forecloses the relitigation of an issue in a subsequent cause of action between the same parties or their privies, where an earlier proceeding resulted in a valid, final judgment and the same issue was actually litigated and necessarily determined. *Id.* at 396 (citing *Ditmore v. Michalik,* 244 Mich.App. 569, 625 N.W.2d 462 (2001); *People v. Gates,* 434 Mich. 146, 452 N.W.2d 627 (1990)).

■ Oakland County Judge Pezzetti issued two rulings in this case. The first ruling was on April 15, 2003, after an April 4, 2003 hearing, attended only by the Cromwell Defendants and their attorneys Sherrie Ross, James J. Williams, and John F. Mills, and not noticed to the Smith Plaintiffs. Judge Pezzetti ruled, *inter alia,* that: (1) the decision of FIA Director Johnson to withhold consent to adoption by the Cromwells was arbitrary and capricious; (2) Clinton County Judge Robertson's orders of adoption by the Smiths must be immediately overturned; (3) the children must be transferred to Oakland County forthwith; and (4) that Judge Pezzetti was prepared to enter an order of adoption on behalf of the Cromwells "as soon as one is prepared and presented to this Court by the Adoption Services Department."

Oakland County Judge Pezzetti issued her second ruling in the case on June 12, 2003, holding that the Smith Plaintiffs, whom the order referred to as "the former adoptive foster parents" of the two minors, did not have standing to appear in the case before the Oakland County Court to challenge that Court's April ruling ordering that their two children be taken away from

them and transferred to the Cromwells in Oakland County.[10]

The issues litigated by the Smith Plaintiffs in the Michigan Courts do not appear to preempt at least one of the constitutional issues pending before this Court.

Without the benefit of the transcript[11] of the Oakland County Rule 45 Motion Hearing, and prior pre hearing proceedings or conferences, if any, the Court can only assume that the only issue litigated in the Oakland County April proceeding was the fate of the children and the only party present was the Cromwell Defendants.

The issue involved in the June 12, 2003 Oakland County Court proceeding was whether the Smith Plaintiffs had standing to intervene in the Cromwell's Oakland County adoption proceeding.

One issue before this Court is whether the Smith Plaintiffs were deprived of their Federal constitutional right to due process, an issue before that was not heard by the state courts. Accordingly, the Cromwell Defendants' argument of complete issue preclusion must fail.

### 2. The Smith Plaintiffs' Standing in This Court

■ Standing relates to the position or situation of the plaintiff in relation to the cause of action and the other parties at the time the plaintiff seeks relief from the court. "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)(quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Also, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." *Id.* at 474, 102 S.Ct. 752 (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

■ In this case, it is clear that the Smith Plaintiffs, as former parents of the two minor children, have alleged a tangible personal injury to themselves. In *Smith v. Organization of Foster Families,* 431 U.S. 816, 844, n. 51, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), the Supreme Court noted that adoption "is recognized as the legal equivalent of biological parenthood."[12]

---

**10.** The Opinion noted that in response to the "Courts April 15, 2003 Opinion and Order, this Court received the following documents from Mr. and Mrs. Smith:"

Adoptive/Foster Parents' Motion for New Trial; Relief From Order, Reconsideration/ Rehearing; Stay of Proceeding to Enforce Judgment.

Pezzetti Opinion and Order June 12, 2003, Pp. 2–3. The Oakland County Court thereafter received on May 2, 2003, a brief in support of the Smiths' motions.

**11.** Despite a commitment from this Court to review documents *in camera,* and maintain confidentiality, Defendant Oakland County Court has refused to provide this Court with a copy of the transcript of the April 4, 2003, Rule 45 motion hearing, and prior hearings or proceedings, if any, contending that state laws require that adoption hearings must be closed and confidential.

This Court, however, in the exercise of its authority, may require in the future that such transcripts be provided for *in camera* review for, *inter alia,* motion hearings, per Fed.R.Civ. P. 43, if necessary for a proper resolution of the issues raised.

**12.** Further, MCL § 710.65(1) states that "[a]fter the entry of the order of adoption . . . the person or persons adopting the adoptee then stand in the place of a parent or parents to

The Smith Plaintiffs' claims of injury rest on alleged due process violations to themselves as parents of the two children, and in addition, the unconstitutionality of the Michigan statutes applied by the state courts.

The Smith Plaintiffs argue that as a result of these constitutional violations, they were precluded from participation in meaningful court proceedings after they had been granted final orders of adoption. Such allegations are more than mere "abstract questions of wide public significance" which amount to "generalized grievances." *Valley Forge Christian College,* at 475, 102 S.Ct. 752 (citing *Warth,* 422 U.S. at 499–500, 95 S.Ct. 2197). The Smith Plaintiffs' claims fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* (quoting *Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). The Supreme Court has noted that family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment. *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 639–40, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). Further, the Court has noted that family life has been afforded substantive and procedural due process protection. *Smith,* 431 U.S. at 842, 97 S.Ct. 2094.

In *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the Supreme Court, in a plurality opinion by Justice O'Connor, noted that the liberty interest at issue—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by the Court. There, as here, no court found the parent to be an unfit parent.

Accordingly, this Court finds that the Smith Plaintiffs have standing to assert their own legal rights in the present case. Indeed, a recent Michigan Supreme Court decision, *In re J.K.,* 468 Mich. 202, 213, 661 N.W.2d 216 (2003), speaks of the fundamental right of a parent and child to maintain the family relationship. Here, the Court concludes that the Smiths, as adoptive parents whose children were removed from them on April 17, 2003 without a hearing, and who were never alleged to be, much less proven to be, unfit parents, have standing to sue to assert their federal constitutional right to due process.

On December 15, 2003 this Court, pursuant to F.R.Civ.P. 17(c) appointed a GAL, John E.S. Scott, Esq., to represent the rights of the children in this Federal proceeding, because at the time of the filing of the Smith Plaintiffs' initial federal pleading, state court rulings had deprived them of their status as the adoptive parents of the two children as of April 17, 2003.[13]

This Court concludes that given the state court rulings in effect at the time that the Smith Plaintiffs filed the instant case, the Smith Plaintiffs do not have standing to represent the interests of the children in these Federal proceedings.

However, given that the Smith Plaintiffs have standing to assert their legal rights,

---

the adoptee in law in all respects as though the adopted person had been born to the adopting parents and are liable for all the duties and entitled to all the rights of parents."

**13.** The Complaint filed by Federal Court-appointed Guardian Ad Litem John E.S. Scott as Third Party Plaintiff on behalf of the minor children, against Hon. Elizabeth M. Pezzetti, individually in her official capacity as a Judge of the Sixth Judicial Circuit of Michigan, as Third Party Defendant, has been resolved by a stipulation among the parties, given that Oakland County Judge Elizabeth Pezzetti has now appointed a guardian ad litem, who will represent the interests of the minor children—to speak for the children—in any further adoption proceeding in the Oakland County Family Court.

the Court's analysis must turn to whether the Court has subject matter jurisdiction over the case.

## C. Subject Matter Jurisdiction

"The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *United States v. Yeager*, 303 F.3d 661, 664 (6th Cir.2002)(quoting *Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). The Court may exercise subject matter jurisdiction of claims brought under 42 U.S.C. §§ 1983 and 1985. Defendants argue, however, that, in this case, Eleventh Amendment immunity and the *Rooker–Feldman* doctrine bar this Court from exercising subject matter jurisdiction.

### 1. Eleventh Amendment Immunity

Defendants Oakland and Clinton County Circuit Courts, and Defendants Oakland and Clinton County Circuit Court Judges, sued in their official capacities, have argued that they are entitled to immunity from suit in federal court pursuant to the Eleventh Amendment as "arms of the state."

 Eleventh Amendment immunity bars federal courts from exercising jurisdiction over a claim, where the party asserting immunity establishes that immunity applies. *Ernst v. Roberts*, 379 F.3d 373, (6th Cir.2004). The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. am. 11. The Eleventh Amendment bars suits against a state by citizens of another state, and, pursuant to *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), prohibits citizens from suing their own state. *Ernst*, 379 F.3d at 378–79 (citing *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir.2002)). However, "[t]he bar of the Eleventh Amendment to suit in Federal courts extends to States and state officials in appropriate circumstances ... but does not extend to counties and similar municipal corporations." *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir.2003)(quoting *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Thus, to enjoy Eleventh Amendment immunity, Defendants must establish that they are "arms of the state" or "alter egos" of the state. However, as the Sixth Circuit noted in *Ernst:*

Even if the party being sued is a state or an arm of the state, Eleventh Amendment immunity will not apply to a claim, under various circumstances.

Immunity may be waived by the state or agency. *Lapides v. Bd. of Regents*, 535 U.S. 613, 619[, 122 S.Ct. 1640, 152 L.Ed.2d 806] (2002); *Lawson v. Shelby County*, 211 F.3d 331, 334 (6th Cir.2000); *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir.1999).

Immunity may be waived by Congress. *Nelson v. Miller*, 170 F.3d at 646; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66[, 109 S.Ct. 2304, 105 L.Ed.2d 45] (1989).

*There will be no immunity if the claim challenges the constitutionality of actions against state officials and seeks only prospective, non-monetary damages, such as an injunction. Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir.2002)(citing *Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) and *Ex Parte Young*, 209 U.S. 123, 150–60, 28 S.Ct.

441, 52 L.Ed. 714 (1908)); *Nelson v. Miller*, 170 F.3d at 646.

*Ernst*, 379 F.3d at 379 (emphasis added). In the instant case, the Smith Plaintiffs' Second Amended Complaint, read in the light most favorable to the Smith Plaintiffs as the non-moving party, seeks prospective, non-monetary damages, such as an injunction or declaratory relief.

In *Alkire v. Irving*, 330 F.3d 802 (6th Cir.2003), the Sixth Circuit considered whether or not a county court of Ohio was an "arm of the state" for Eleventh Amendment purposes. The Sixth Circuit stated:

> We do not write on a blank slate. Several years ago, we held that an Ohio court of common pleas was an arm of the state for Eleventh Amendment purposes. *See Mumford v. Basinski*, 105 F.3d 268[264] (6th Cir.1997), *cert. denied*, 522 U.S. 914, 118 S.Ct. 298, 139 L.Ed.2d 229 (1997); *see also Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir.1988)(holding that an Ohio municipal court could not be sued under § 1983 because it was not a "person" as § 1983 uses that term) ... the Supreme Court has taken apart the foundation of our decision in *Mumford* since it was decided.

*Alkire*, 330 F.3d at 811. In *Mumford*, the Sixth Circuit had examined a variety of factors in determining whether the court was an arm of the state. The Court in *Alkire* stated:

> The problem with relying on the decision we made in *Mumford* is that we nowhere addressed the issue of who would pay for a damage judgment against the court of common pleas. The Supreme Court has now explicitly told us that this is the most important factor bearing on the Eleventh Amendment question. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)(stating "that the question whether a money judgment

against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued"); *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)(recognizing "the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations").

330 F.3d at 811. The Sixth Circuit stated in *Alkire:* "we now recognize that the question of who pays a damage judgment against an entity as the most important factor in arm-of-the-state analysis, though it is unclear whether it is the only factor or merely the principal one." *Alkire*, 330 F.3d at 811–12. The court has explicitly left open the latter issue, to wit: "[w]hether we view as dispositive *Hess's* emphasis on the State treasury, or [just] interpret it as placing significant weight on one factor of a multi-factor test." *Id.* at 812 (quoting *Brotherton v. Cleveland*, 173 F.3d 552, 560–61 (1999)).

In a subsequent opinion, the Sixth Circuit discussed the factor(s) issue in terms that appear to flesh out this issue. In *S.J. v. Hamilton County, Ohio*, 374 F.3d 416 (6th Cir.2004), while the court did not answer the question of whether the impact on the state treasury has now become the only factor to be considered in the arm of the state analysis, the court stated that "there are significant reasons to doubt such a suggestion." 374 F.3d at 421. The court reasoned that the sovereign immunity doctrine is about money *and* dignity—it not only protects a State's treasury, but also "pervasively ... emphasizes the integrity retained by each state in our federal system." *Id.* (quoting *Hess*, 513 U.S. at 39, 115 S.Ct. 394) (emphasis in original). The court, while not specifically deciding the issue, stated:

To the extent that considerations of dignity are relevant in determining whether an entity is protected by state sovereign immunity, one would expect this factor to weigh heavily in a suit against a state court. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78–79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)("[T]he constitution of the United States ... recognizes and preserves the autonomy and independence of the states ... in their judicial departments."). Such courts are the "adjudicative voice" of the state itself. *Harris [v. Missouri Court of Appeals],* 787 F.2d [427] at 429 [(8th Cir.1986)]. *That is particularly true in the context of a court system that, like Ohio's, is mandated by the state constitution to be uniform and to be supervised by one supreme court.* Ohio Const. art. IV, § 5; *Foster,* 864 F.2d at 418. *While lower state courts may sometimes be funded by the counties where they sit, separation of powers concerns frequently preclude counties and other branches of government from denying reasonable funding for the operation of the courts. Id.* at 421–22 (emphasis added). Michigan Circuit Courts, like those in Ohio, are mandated by the Michigan Constitution to be uniform and under the supervision of the Michigan Supreme Court. Mich. Const. art. VI, § 1 (1963)("The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house."). Michigan Circuit Courts, are funded in part by the county in which they are located.

In *Ernst,* the Sixth Circuit, while again leaving open the question of whether other factors may be considered in the arm of the state analysis, stated that "when no evidence is presented regarding the issue of whether the funds to satisfy a judgment would come from the state treasury, the other factors may be considered." 379 F.3d 373, 381, (citing *Dubuc v. Mich. Bd. of Law Examiners,* 342 F.3d 610, 615 (6th Cir.2003)) "The parties have not submitted any evidence regarding whether the State of Michigan would be ultimately responsible for any money judgment against the Board or the Bar. The other factors, however, weigh in favor of finding the Board and the Bar immune from this lawsuit.".

▇▇▇ In this case, the parties have not presented any evidence showing whether the State of Michigan would be responsible for a money judgment against the Defendant Circuit Courts. The Court, while noting that the Sixth Circuit has expressly left undecided the question of whether the impact on the state treasury is the only factor to be considered in the analysis, finds that, in such a situation, where no evidence as to funding is available, it may consider other factors in its analysis. Specifically, the Court, in the absence of evidence on the most important factor, looks to the "dignity" factor examined by the Sixth Circuit in *S.J.,* 374 F.3d at 421. The Court, in examining this factor, finds that Defendant Circuit Courts, like the Ohio county court in *S.J.,* are the "adjudicative voice" of the State of Michigan, created pursuant to the Michigan Constitution and subject to the supervision of the Michigan Supreme Court. As such, they are "arms of the state," entitled to the sovereign immunity provided to the State of Michigan itself. Accordingly, the Court affords Defendants Oakland County Circuit Court and Clinton County Circuit Court Eleventh Amendment immunity and grants their Motions to Dismiss.

▇▇▇ However, the Court denies Eleventh Amendment immunity as to certain relief requested against the individual De-

fendant Judges in their official capacity, under the exception to Eleventh Amendment immunity contained in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and noted in *Ernst.* Under the *Ex Parte Young* exception, there will be no immunity if the claim challenges the constitutionality of actions against state officials and seeks only prospective, non-monetary damages, such as an injunction. 209 U.S. at 150–60, 28 S.Ct. 441; *See Ernst v. Roberts,* 379 F.3d 373, 379, n. 8.

■ In the instant case, the Smith Plaintiffs are seeking prospective, non-monetary relief from the three Defendant Judges in their official capacity. Therefore, though the county courts can be termed arms of the state, and the Defendant Judges are sued in their official capacities, the Defendant Judges are not entitled to Eleventh Amendment immunity under the *Ex Parte Young* exception. Accordingly, the Court denies Defendant Judges Pezzetti, Anderson, and Sullivan's (vice Robertson) request for immunity under the Eleventh Amendment.

### 2. Rooker–Feldman Doctrine

The *Rooker–Feldman* doctrine has evolved from two Supreme Court cases which establish that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." *Hood v. Keller,* 341 F.3d 593, 597 (6th Cir.2003)(quoting *Peterson Novelties,* 305 F.3d at 390; and citing *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). The *Feldman* Court stated that "United States District Courts ... do not have jurisdiction ... over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those de-

cisions may only be had in this Court." *Tropf v. Fidelity National Title Ins. Co.,* 289 F.3d 929, 936 (6th Cir.2002)(quoting *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303; and citing *Anderson v. Charter Township of Ypsilanti,* 266 F.3d 487, 492 (6th Cir. 2001)).

■ In a recent decision of the United States Court of Appeals for the Sixth Circuit, *Howard v. Whitbeck,* 382 F.3d 633 (6th Cir.2004); the Court reaffirmed that the *Rooker–Feldman* doctrine bars attempts by a federal plaintiff to receive appellate review of a state-court decision in a federal district court.

■ The Sixth Circuit has devised "a number of formulae for determining when a district court lacks jurisdiction under the *Rooker–Feldman* doctrine; broken down to essentials, there are two categories of cases barred by the doctrine." *DLX, Inc. v. Commonwealth of Kentucky,* 381 F.3d 511, (6th Cir.2004). First, when the district court is asked to "engage in appellate review of state court proceedings," the doctrine necessarily applies. *Id.* (quoting *Peterson Novelties, Inc. v. City of Berkley,* 305 F.3d 386, 390 (6th Cir.2002)). In determining when a plaintiff is seeking appellate review, the Sixth Circuit looks to the relief sought, or asks the question "whether the plaintiff alleges 'that the state court's judgment actively caused him injury [rather than] that the judgment merely failed to redress a preexisting injury.' " *DLX* at 516 (quoting *Pieper v. Am. Arbitration Ass'n, Inc.,* 336 F.3d 458, 461, n. 1 (6th Cir.2003)).

■ The second category of cases barred by the *Rooker–Feldman* doctrine are those which allege an injury that predates a state-court determination, "but present issues inextricably intertwined with the claim asserted in the prior state

court proceeding." *DLX, Inc.,* at 516–19. The Sixth Circuit has held:

> The federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id.* (quoting *Peterson Novelties,* 305 F.3d at 391). To this end, the doctrine bars federal court jurisdiction where the claim is "a specific grievance that the law was invalidly—even unconstitutionally—applied in the plaintiff's particular case." *Tropf,* 289 F.3d at 937 (quoting *Catz. v. Chalker,* 142 F.3d 279, 293 (6th Cir.1998)).

However, the Sixth Circuit appears to have limited the preclusive impact of the concept of "inextricably intertwined". In *Catz v. Chalker,* 142 F.3d 279, 281 (6th Cir.1998), aptly described by Chief Judge Boggs as "a very complicated case, both procedurally and factually," the Plaintiff challenged a divorce decree entered by a state court in Arizona.

The Plaintiff alleged that many of the Arizona divorce court rulings

> were procured by a variety of due process violations, including failure to serve him, failure to give him notice of court dates at which his rights were lost and improper collusion and ex parte contacts between Chalker's lawyers and the Arizona judiciary. Catz could have attacked these actions by a timely appeal of the Arizona divorce action, by pursuing an initial plea of full faith and credit for the Ohio divorce judgement, or by other means. He did not.

*Id.*

Plaintiff Catz sought, *inter alia,* a declaration that the Arizona divorce decree was void because it violated his rights under the Due Process Clause of the Fourteenth Amendment.

The Sixth Circuit was faced with

> the question of whether Catz's action is a "core" domestic relations case, seeking a declaration of marital or parental status, or a constitutional claim in which it is incidental that the underlying dispute involves a divorce. We conclude that the case is best described as the latter. True, the remedy Catz seeks—a declaration that the Pima County divorce decree is void as a violation of due process—would seem to "directly impact the marriage status and rights between the husband Plaintiff and his wife." On the other hand, if the divorce judgment were unconstitutionally obtained, it should be regarded as a nullity, and any decree so stating would change nothing at all. Furthermore, the declaration Catz seeks would not itself address the merits, or ultimately dispose of Chalker's divorce petition; she would be free to litigate her marital status in state court. Finally, Catz is not asking the district court to involve itself in the sort of questions attendant to domestic relations that are assumed to be within the special expertise of the state courts—for instance, the merits of a divorce action; what custody determination would be in the best interest of a child .... Instead, *Catz asks the court to examine whether certain judicial proceedings which happened to involve a divorce, comported with the federal constitutional guarantee of due process.*

*Catz* at 291–92 (emphasis added).

The Sixth Circuit distinguished *Catz* from the Supreme Court decision in *Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) where the Court noted that the domestic relations exception divests federal courts of

power to issue divorce or child custody decrees. In *Ankenbrandt,* the Court found that the lawsuit did not seek such a decree, but instead alleged torts against the children. The Supreme Court concluded that the domestic relations exception should be narrowly confined to suits for divorce or child custody decrees.

Accordingly, the Sixth Circuit concluded in *Catz:*

> the domestic relations exception applies only where a plaintiff positively sues in federal court for divorce, alimony or child custody. This is simply not such a lawsuit. Nor is it made so by the fact that the suit, if successful, would alter the parties' status rights, and obligations as they had been most recently determined by the Pima County court.

*Id.* at 291. Further, the Sixth Circuit in *Catz* refused to expand the domestic relations exception "concept to include every case touching and concerning the issuance of a . . . child custody decree". *Id.* at 292.

In *Catz,* the Sixth Circuit did not decline jurisdiction under the *Rooker–Feldman* doctrine because

> Catz' due process allegation does not implicate the merits of the divorce decree, only the procedures leading up to it . . . . relief for Catz' due process claim would not consist of a conflicting judgment on the merits; if the court were to declare the Pima County decision void as having been served in violation of due process, that would not itself prevent Chalker from resuming or refiling her divorce action, nor prevent the Pima County Court from coming to the same conclusion under constitutional procedures.

*Id.* at 293.

Finally, the Sixth Circuit recognized that Catz' lawsuit was a specific grievance, rather than a general challenge, yet the Sixth Circuit held that the *Rooker–Feldman* doctrine did not apply:

> However, we believe that the cases stating that, to avoid the reach of the *Rooker–Feldman* doctrine, a case must represent a "general challenge" rather than a "specific grievance" do so in the context of a direct attack on the substance of the state court decision. Here, the claims that survive claim preclusion, as outlined above, are directed to the *procedures* used by the Arizona court, procedures that Judge Echols found, if true, to be "shocking." Thus, permitting jurisdiction in this case does not contravene the heart of the *Rooker–Feldman* doctrine, the prohibition reviewing the substance of state court judgment. *See Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.,* 801 F.2d 186, 188–89 (6th Cir.1986).

*Catz* at 294 (emphasis in original).

Specifically, the Sixth Circuit quoted with approval the following language from *Sun Valley,* which in turn quoted a Fourth Circuit decision, recognizing that although a district court has no authority to review final judgments of a State Court judicial proceedings,

> [a] federal court may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident or mistake.

*Id.* at 294. In the instant case, the Smith Plaintiffs' Second Amended Complaint speaks, *inter alia,* in those terms. Moreover, the refusal of defendant Oakland County to provide this Court, for confidential *in camera* review, with the transcript of Judge Pezzetti's hearing of April 4, 2003 and any pretrial proceedings, prevents this Court from doing anything other than accepting the facts of the complaint as true for purposes of this motion.

In *Catz,* the Sixth Circuit, in reaching its conclusion, excised the claims barred by claim preclusion, and adjudicated the re-

maining due process challenge. This Court will follow the same path in its *Rooker–Feldman* analysis, and excuse the claims barred by claim preclusion, or by the domestic relations exception.

The *Catz* decision concluded:

> [T]he various remaining claims of the alleged procedural violation of *Catz* constitutional rights do not rest on any substantive wrongness of the rulings of the Arizona courts, and the *Rooker–Feldman* doctrine does not bar the maintenance of this action.

*Id.* at 295. So, too, in the instant case.

■ Certainly, the *Rooker–Feldman* doctrine does not preclude jurisdiction when the plaintiff's claim is merely "a general challenge to the constitutionality of the state law applied in the state action," rather than a challenge to the law's application in a particular state case. *Pieper,* 336 F.3d at 460 (quoting *Tropf,* 289 F.3d at 937). The Smith Plaintiffs' Second Amended Complaint lists, *inter alia* a general challenge to a Michigan statute.

On the other hand, the *Rooker–Feldman* doctrine holds that lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings to adjudicate claims "inextricably intertwined" with issues denied in the court proceedings. *Peterson Novelties v. City of Berkley,* 305 F.3d 386, 390 (6th Cir.2002).

"Though simple in concept, the doctrine is not easily applied. This is because the doctrine is, as [the Sixth Circuit] has described it, 'simple (yet nonetheless confusing).'" 305 F.3d at 391 (quoting *Gottfried v. Med. Planning Servs.,* 142 F.3d 326, 330 (6th Cir.1998)).

■ In determining the applicability of the *Rooker–Feldman* doctrine, federal courts "cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint," but instead "must pay close attention to the *relief* sought by the federal-court plaintiff." *Hood,* 341 F.3d at 597 (quoting *Bianchi v. Rylaarsdam,* 334 F.3d 895, 900 (9th Cir.2003))(emphasis in original). If the requested relief seeks to undo the effect of a state court decision, then the federal court lacks subject matter jurisdiction. *Gilbert v. Ferry,* 298 F.Supp.2d 606, 613 (E.D.Mich.2003).

In *Howard v. Whitbeck, supra,* the Sixth Circuit reversed the district court's dismissal of the Plaintiff's § 1983 suit for lack of subject matter jurisdiction on the basis of the *Rooker–Feldman* doctrine. The court of appeals reinstated Plaintiff's case, concluding that Howard's complaint fairly presented a general challenge to the statute, sufficient to provide jurisdiction:

> Whether or not Howard's general challenge to the Michigan statute would ultimately succeed is irrelevant to the question of subject matter jurisdiction, as long as the claim presented is not frivolous .... While the thrust of the complaint is definitely an "as applied" challenge, the language used clearly indicates that the statute itself is also being challenged as unconstitutional, and under *Feldman,* the dismissal of the as-applied claim on the basis of *Rooker–Feldman* does not mean that the facial challenge cannot be allowed to proceed.

*Howard* at 640.

In the instant case, the Second Amended Complaint raises both a facial challenge, and an as-applied challenge. The facial challenge jurisdiction is not precluded under the *Rooker–Feldman* doctrine.

Defendants contend, however, that the Smith Plaintiffs' complaint goes beyond a facial challenge.

Defendant Oakland County argues that [i]n the instant case, the Plaintiffs' challenge goes well beyond a general chal-

lenge to the constitutionality of the state law applied in the state action... It is clear that the Plaintiffs' intention in this lawsuit is to undo what has been done in the underlying state court proceeding and is asking this court to sit as an appeals court to review the state court process.

(Brief in Support of Defendant Oakland County's Motion to Dismiss First Amended Complaint Incorporated by Reference in Motion to Dismiss Second Amended Complaint p. 11).

The Cromwell Defendants argue that "the *Rooker–Feldman* doctrine applies to all orders entered by the state courts in this matter and bars Plaintiffs' requests for declaratory relief." (Brief in Support of the Cromwell Defendant's Motion to Dismiss First Amended Complaint (Incorporated by Reference in Motion to Dismiss Second Amended Complaint p. 9)).

Defendant Clinton County argues that

[a] federal district court cannot substitute its judgment for that of state appellate court, nor can this court act as an appellate court for decisions made by the state courts. The Plaintiffs'/Petitioners' pleadings in this case embody nothing more than a thinly disguised invitation for this Court to do just that in the context of an adoption.

(Brief in Support of Defendant Clinton County's Motion to Dismiss Second Amended Complaint, p. 9).

This Court must approach Defendants' motions to dismiss under Fed.R.Civ.P. 12, by taking the pleadings in the light most favorable to the non-moving party, the Smith Plaintiffs. The Court must accept all "well-pled allegations of the complaint" as true. The Court must carry out a plain reading of the Complaint. At the same time, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Booker v. GTE.net LLC,* 350 F.3d 515 (6th Cir.2003) quoting *In re Sofa-*

*mor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997).

In the instant Second Amended Complaint, the Smith Plaintiffs state as follows under "IV the Unconstitutionality of M.C.L. 710.45":

M.C.L. 710.45 is unconstitutional on its face . . . .

2d. Am. Comp. P. 13, ¶ 76:

M.C.L. 710.45 is vague in that it does not provide for or require substantive due process for the adoptive parents or the adopted children . . . .

*Id.* P. 14, ¶ 80.

Included in the Smiths Plaintiffs' request for relief in the Second Amended Complaint, is:

Entry of a declaratory judgment finding that MCL 710.24 and 710.45 are unconstitutional on their face and/or as applied in whole or in part.

(Second Amended Complaint, pp. 30–31)(emphasis added).

As previously discussed, for this Court to adequately determine whether the Smith Plaintiffs' claims are barred by the *Rooker–Feldman* doctrine, the Court must examine the relief sought as to each Defendant.

*A. Defendants Clinton County Circuit Court and Hon. Lisa Sullivan (successor to Honorable Marvin Robertson)*

Defendants Clinton County Court and Judge Sullivan argue that the relief sought amounts to an impermissible appeal of Judge Robertson's April 18, 2003 Corrected Order Setting Aside Orders of Adoption. Further, the Clinton County Defendants argue that any prospective relief requested by the Smith Plaintiffs could not be enforced in Clinton County without a finding that the April 18, 2003 Order was invalid. The Smith Plaintiffs argue that

what they are seeking is a declaration that M.C.L. § 710.45 is unconstitutional on its face and/or as applied, and that, based upon that declaration, the April 18, 2003 Order will be overturned.

The Court has previously concluded that the Clinton County Circuit Court is entitled to 11th Am. immunity. As to the Defendant Clinton County Judge, the Court finds that the Smith Plaintiffs' claims do not amount to an impermissible appeal of the April 18, 2003 Order. To the extent that the Smith Plaintiffs can be said to allege that M.C.L. §§ 710.45 and 710.24a are unconstitutional on their face because they fail to provide notice to adoptive parents, the Court finds that the Smith Plaintiffs' claim fails as a matter of law. M.C.L. § 710.24a, which defines interested parties to an adoption proceeding, specifically provides in (1)(c) that an "adult parent ... of an adoptee" is an interested party in a Petition for Adoption. Therefore, to the extent the Smith Plaintiffs' claims may be viewed as a challenge to the statutes on their face, the Court finds that the statutes do provide due process to the parents because they provide for notice and an opportunity to be heard to the parents.

However, the fact that the Smith Plaintiffs, as parents of the children on April 4, 2003, were not provided notice of the hearing in Oakland and Clinton counties, resulting in the loss of their children, raises due process violation questions similar to *Catz v. Chalker.* Judge Robertson's April 17th and April 18th Orders Setting Aside his Orders of Adoption were made without a hearing and notice to the Smiths. Similar to *Catz,* this particular due process claim is directed to the *procedures* used by Judge Robertson rather than the substance of his state court judgment. Allowing jurisdiction in this case does not rest on any substantive wrongness of Judge Roberston's rulings, and the *Rooker–Feld-*

*man* doctrine does not bar the maintenance of this action. See *Catz* at 295. Accordingly, as to this due process claim, the Smith Plaintiffs survive the motion to dismiss.

### B. Defendants Oakland County Circuit Court, Hon. Elizabeth Pezzetti, and Hon. Martha Anderson

The Court has previously concluded that the Oakland County Circuit Court is entitled to 11th Amendment immunity.

The Defendant Oakland County Circuit Judges, in their official capacity, argue that the relief requested by the Smith Plaintiffs amounts to impermissible appeals of orders by Defendant Judges Pezzetti and Anderson, entered subsequent to Judge Robertson's March 17, 2003 Orders of Adoption. The Smith Plaintiffs argue, *inter alia,* that they are seeking a declaration that M.C.L. § 710.45 is unconstitutional on its face.

While some, or even much of the relief requested by the Smith Plaintiffs as to the Oakland County Judge Defendants, may amount to an impermissible appeal of the Oakland County Judges' orders, there is some constitutional relief requested which does not amount to an impermissible appeal, e.g., a challenge to the constitutionality of the Michigan statute on its face and the due process claim of failure to be noticed or provided an opportunity to attend the hearings.

Pursuant to the *Rooker–Feldman* doctrine, certainly the Smith Plaintiffs are afforded the opportunity to challenge the two Michigan statutes, M.C.L. §§ 710.45 and 710.24a as unconstitutional on their face. The Court recognizes that the Smith Plaintiffs' Second Amended Complaint forages through the legal countryside going well beyond the claim of "unconstitutional statute on its face." At the same time, ruling on a motion to dismiss, as the Sixth

Circuit noted recently in *Howard v. Whitbeck*, as previously cited:

> While the thrust of the complaint is definitely an "as-applied" challenge, the language used clearly indicates that the statute itself is also being challenged as unconstitutional, and under *Feldman* the dismissal of the as-applied claim on the basis of *Rooker–Feldman* does not mean that the facial challenge cannot be allowed to proceed.

*Howard* at 640.

The Smith Plaintiffs' Complaint speaks of a challenge to the statute as "unconstitutional on its face and as applied," (Second Amended Complaint, p. 13, ¶ 76).

The Smith Plaintiffs are also challenging the application of M.C.L. §§ 710.45 and 710.24a by Defendant Judge Pezzetti. Specifically, the Smith Plaintiffs allege:

76. *M.C.L. 710.45 is unconstitutional on its face and as applied* as it deprives parents and children their constitutional rights of *due process* and equal protection.

77. M.C.L. 710.45 permits and/or Defendant Oakland Court permitted a Section 45 Motion to proceed to hearing without notice to or an opportunity to be heard by the legally adoptive parents of the children, the children and/or the GAL of the children.

78. Defendant Oakland County permitted a Section 45 Motion to proceed to a hearing following the entry of Orders of Adoption, contrary to M.C.L. 710.45.

79. M.C.L. 710.45 permits and/or Defendant Oakland Court permitted a Section 45 Motion to proceed to a hearing without Notice to, or an opportunity to be heard by, the MCI Superintendent who issued the Consent to Adoption Decision, and without making the MCI Superintendent a party.

80. M.C.L. 710.45 is vague in that it does not provide for or require substantive or procedural due process for the adoptive parents or the adopted children either directly or by an attorney, guardian, or guardian *ad litem*.

81. M.C.L. 710.45 and/or Defendant Oakland Court did not define "interested parties" or require notice to interested parties, including, but not limited to, the legal parents of the children, the children, and the GAL.

82. M.C.L. 710.45 permits and/or Defendant Oakland Court permitted a hearing on a Section 45 Motion after the entry of Orders of Adoption in another Court, and without notice to the legal parents of the children or their GAL.

83. M.C.L. 710.45 and/or Defendant Oakland Court did not require notice to other persons, including, but not limited to persons who receive a Consent to Adoption Decision from the MCI Superintendent and who filed an adoption petition even though it has been the practice of other Michigan courts to permit such other persons notice and an opportunity to participate in Section 45 proceedings.

84. M.C.L. 710.45 and/or Defendant Oakland Court did not require a full evidentiary hearing with participation by all interested parties at the hearing on a Section 45 Motion, or require the testimony of the MCI Superintendent who provided the Consent to Adoption Decision.

85. M.C.L. 710.45 and/or Defendant Oakland County Court failed to follow the Michigan Court of Appeals' holding in *In re Cotton*, 208 Mich. App. 180, 526 N.W.2d 601 (1994),

which requires the court to determine whether there was a complete lack of any reason to withhold adoption consent.

86. M.C.L. 710.45 and/or Defendant Oakland Court authorized the termination of Plaintiffs parental rights contrary to M.C.L. 712A.19(b), which requires by clear and convincing evidence proof of at least one of the listed statutory grounds.

87. M.C.L. 710.45 and/or Defendant Oakland Court failed to require notice to the legal parents of the children and the GAL as interested parties defined in M.C.L. 710.24a.

88. *M.C.L. 710.45 of the Michigan Adoption Code is unconstitutional on its face and/or as applied* based on *federal due process* and equal protection grounds, to the extent it authorizes that:

A. Adoptive parents may have their parental rights terminated, their adoptions rescinded, their adoptive children removed from their custody permanently, and their fundamental rights to family autonomy eviscerated without (1) notice to the adoptive parents, (2) an opportunity for the adoptive parents to be heard, (3) standing being granted to the adoptive parents in those termination proceedings, (4) the adoptive parents being afforded an opportunity to participate in discovery, (5) any allegation of the adoptive parents' misconduct or unfitness as parents, (6) clear and convincing evidence of those allegations, (7) the adoptive parents' rights to testify, (8) the adoptive parents' rights to counsel, (9) the adoptive parents' rights to call witnesses, cross examine witnesses, and testify on their own behalf, and (10) the adoptive parents having an appeal by right of issues regarding the termination of their parental rights and other due process and equal protection rights;

B. Adoptive children can be denied counsel, denied access to the courts, and can be made to suffer the same indignities and refusal of rights as is mentioned of adoptive parents in paragraph (a) directly above.

C. A decision affecting the parental rights of children may be made without considering the best interests of those children.

(Second Amended Complaint, pp. 13–16). With regard to the unconstitutionality of M.C.L. § 710.24a, the Smith Plaintiffs allege:

M.C.L. 710.24a and/or Defendant Oakland Court failed to include as an "interested party," *inter alia*, a child under 14 years of age, the guardian *ad litem* of a child under 14 years of age, the attorney for a child under 14 years of age, all other petitioners for adoption other than the petitioner filing the motion, and the agency representative whose adoption consent is sought.

(Second Amended Complaint, p. 16, ¶ 90).

The Court concludes that the review the Smith Plaintiffs are seeking goes both to a challenge to the statute on its face and to the alleged misapplication of the statutes by Judge Pezzetti. The Court recognizes that any inquiry into the application of the statute requires this Court to conduct an appellate review of the orders in question, to scrutinize the application of the statute(s) in question to the instant case. The Supreme Court and Sixth Circuit Court of Appeals have made it clear that under the *Rooker–Feldman* doctrine, a District Court may not engage in appellate review of state court orders. *Tropf*, 289 F.3d at

937. Such a review may only be had in the Supreme Court.

At the same time, this Court recognizes the Sixth Circuit holding in *Catz v. Chalker, supra,* which permits review of a due process claim not challenging the state court order, but challenging the state court procedure. In such a situation, a finding of a due process violation does not mandate a change of the state court order, but instead, a change in the proceeding.

As previously stated, to the extent that the Smith Plaintiffs can be said to allege that M.C.L. §§ 710.45 and 710.24a are unconstitutional on their face because they fail to provide notice to adoptive parents, the Court finds that the Smith Plaintiffs' claim fails as a matter of law. On the other hand, per *Catz v. Chalker,* the fact that the Smith Plaintiffs were not provided notice of the hearing in Oakland and Clinton counties, that resulted in the loss of their children, raises due process violation questions similar to *Catz.* Judge Pezzetti's April 4, 2003 Hearing was held without notice to the Smith Plaintiffs, the then parents of the children. With this due process claim, the Smith Plaintiffs are not challenging the substance of Judge Pezzetti's ruling (i.e. her determination that the FIA's decision to withhold consent to adoption by the Cromwells was arbitrary and capricious) but instead the *procedures* used by Judge Pezzetti. Per *Catz,* the *Rooker–Feldman* doctrine does not prohibit this type of due process claim. Accordingly, as to this due process claim the Smith Plaintiffs survive the motion to dismiss.

### III. Domestic Relations Exception

■ The Smith Plaintiffs also seek, *inter alia,* prospective injunctive relief, in the form of orders (1) returning the minor children to Plaintiffs, (2) permitting Plaintiffs visitation with the minor children, and (3) allowing GAL Birch access to the children. (See Second Amended Complaint, pp. 30–31). The Court finds that such relief is clearly barred by the domestic relations exception to federal jurisdiction discussed in *Elk Grove Unified School District v. Newdow,* —— U.S. ——, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004).

In *Elk Grove,* the Court considered a challenge to the words "under God" as included in the Pledge of Allegiance. Michael Newdow, the divorced father of a California student brought suit as his daughter's next friend, claiming that the policy of his daughter's school district requiring students to recite the pledge was a religious indoctrination of his daughter that violated the First Amendment. The daughter's mother intervened, claiming that, although she and Newdow shared physical custody of their daughter, a state-court decree had granted her "exclusive legal custody" of the child, "including the sole right to represent [the daughter's] legal interests and make all decision[s] about her education." *Id.* at 2307. The question before the Supreme Court, therefore, became whether Newdow had standing to assert the claim as next friend of his daughter.

The Supreme Court noted that "legal disharmony in family relations is not uncommon, and in many instances ... poses no bar to federal-court adjudication of proper federal questions," *Id.* at 2310–11. The Supreme Court found, however, that because Newdow's parental status was defined by California law, it was proper for the Court to defer to the state-court interpretation of that custody law. The Court stated:

> In our view, it is improper for the federal courts to entertain a claim by a plaintiff whose standing to sue is founded on family law rights that are in dispute when prosecution of the lawsuit may have an adverse effect on the person

who is the source of the plaintiff's claimed standing. When hard questions of domestic relations are sure to affect the outcome, the prudent course is for the federal court to stay its hand rather than reach out to resolve a weighty question of federal constitutional law. *Id.* at 2312. The Court concluded that, because Newdow was deprived under California law of the right to sue as next friend of his daughter, Newdow likewise lacked standing to sue on her behalf in federal court.

In this case, the Smith Plaintiffs are seeking, *inter alia*, various orders relating to child custody and visitation. Such questions of domestic relations are outside the realm of Federal jurisdiction, pursuant to the domestic relations exception. The Supreme Court has recognized that it has customarily declined to intervene in the realm of domestic relations: "the whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). The Supreme Court has recognized a domestic relations exception that divests the federal courts of power to issue child custody decrees. *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).

Therefore, a significant portion of the Smith Plaintiffs' requested relief, if not barred by the *Rooker–Feldman* doctrine, is barred by the domestic relations exception. The Supreme Court did, however, in *Elk Grove*, recognize that a rare instance could arise where it could be necessary to answer a substantive federal question that transcended or existed apart from the family law issue. *Elk Grove*, —— U.S. at ——, 124 S.Ct. at 2309. Insofar as the Smith Plaintiffs have attacked the constitutionality of the Michigan statute on its face, and insofar as they have challenged the lack of

due process at state court proceedings, this case could be that are instance.

As discussed before, the Sixth Circuit, prior to the Supreme Court decision in *Elk Grove*, adopted a very narrow definition of the domestic relations exception:

> [T]he domestic relations exception applies only where a plaintiff sues in federal court for divorce, alimony, or child custody.

*Catz v. Chalker*, 142 F.3d 279, 291 (6th Cir.1998). The Sixth Circuit discussed the issue in *Catz* in these terms:

> [W]hether Catz's action is a "core" domestic relations case, seeking a declaration of marital or parental status, or a constitutional claim in which it is incidental that the underlying dispute involves a divorce, we conclude that the case is best described as the latter.

*Catz.*, 142 F.3d at 291. Thus, while Catz sought a declaration that a divorce decree was void as a violation of due process, the Sixth Circuit concluded that "if the divorce judgment were unconstitutionally obtained, it should be regarded as a nullity, and any decree so stating would change nothing at all." *Id.* However, the Sixth Circuit also noted that *Catz* was

> not asking the district court to involve itself in the sort of questions attendant to domestic relations that are assumed to be within the special expertise of the state courts—for instance—what custody determination would be in the best interest of a child. Instead Catz asks the court to examine whether certain proceedings, which happened to involve a divorce, comported with the federal constitutional guarantee of due process. This is a sphere in which the federal courts may claim an expertise at least equivalent to that of the state courts.

*Id.* at 292–93.

In the instant case, the counts that remain, after parsing from the Smith Plain-

tiffs' requested relief domestic relations custody issues within the special expertise of the state courts, include a constitutional claim incidental to the custody claim. Just as in *Catz*, where Plaintiff claimed a due process violation at the state court hearing, described by that U.S. District Judge as "shocking, if true," so too here the Smith Plaintiffs raise due process claims regarding the removal of children from a family without a hearing, or claim of cause tied to the Smith Plaintiffs' behavior, that can only be described as shocking.

The Court therefore denies the Clinton County Judge Lisa Sullivan's (vice Judge Robertson) and the Oakland County Judge Pezzetti's Motion to Dismiss the § 1983 claims presented in the Second Amended Complaint.

The Court does grant Oakland County Circuit Court Judge Martha D. Anderson's Motion to Dismiss the § 1983 claim because the Smith Plaintiffs have failed to allege sufficient facts to support such a claim. The Smith Plaintiffs Second Amended Complaint alleges as to Judge Martha D. Anderson:

> 7b. Defendant/Respondent Oakland County Circuit Court Judge, Hon. Martha D. Anderson ("Defendant Anderson") held hearings and entered orders affecting the rights of Plaintiffs and their minor children.

Second Amended Complaint P. 2

> 95h. Defendant Oakland County Court and Defendant Anderson failed to refer the Petition and motions before her to a visiting judge as required by MCL 710.45(7), and dismissed and/or denied Plaintiffs' and GAL Birch's motions without providing them a hearing.

*Id.* at P. 20.

These two paragraphs of allegations, taken in a light most favorable to the non-moving party, do not survive Defendant Judge Martha D. Anderson's Motion to Dismiss. Further, in support of the granting of Judge Anderson's Motion to Dismiss the Court notes that the Smith Plaintiffs request for relief at the end of the Second Amended Complaint does not mention Judge Robertson.

## D. Defendants Jonathan and Donna Cromwell; Conspiracy Charge Against All Defendants

The Cromwell Defendants contend that they are merely beneficiaries of the orders entered by the state-court judges and, as such, the claims pursued against them under § 1983 are impermissible appeals of those orders. The Smith Plaintiffs allege that the Cromwell Defendants participated in a conspiracy under § 1983 to deprive them of their due process rights.[14]

> As the Sixth Circuit has stated:
>
> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspiracy need not have known all the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943–944 (6th Cir.1985).

In order for the Smith Plaintiffs claim under § 1983 to proceed against the Cromwell Defendants, the Cromwell Defendants must have been "jointly engaged" with state officials. *See Dennis v. Sparks*, 449 U.S. 24, 28, 101 S.Ct. 183, 66

---

14. The Smith Plaintiffs also claim a conspiracy under § 1985. See, *infra.*

L.Ed.2d 185 (1980). Private persons, such as the Cromwell Defendants, cannot be considered "persons" under § 1983 unless they jointly engage with state officials in taking the alleged unconstitutional action. "Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Id.* In this case, however, the Smith Plaintiffs allege active participation by the Cromwell Defendants in securing an unconstitutional order. Specifically, the Smith Plaintiffs allege:

> Defendant Cromwells authorized and participated in action intentionally designed to deprive Plaintiffs ... notice of their Section 45 proceedings...and the opportunity to participate in the April 4, 2003 hearing.

(Second Amended Complaint, p. 22, ¶ 97D).

In ¶ 98, Page 22, the Second Amended Complaint states:

> A conspiracy existed and continues to exist, which included, but was not limited to, Defendants Cromwells, their counsel, Defendant Oakland County, Defendant Clinton County, FIA Legal Affairs Director Michael ....

The Court finds that the allegation of conspiracy against the Cromwell Defendants is sufficient to bring them within the purview of "persons" under § 1983.

### 1. *Discussion of § 1983 Conspiracy As To All Defendants*

 As the Second Amended Complaint may be read as containing a count of conspiracy under § 1983, the Court finds that such a cause of action is maintainable under the law. *See* Nahmoud, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION, § 2:21, p. 2–86 (4th ed. 2003) ("Even apart from the state action-color of law issue, an extensive body of § 1983 conspiracy case law has developed...."). It is necessary for a § 1983 claim that a consti-

tutional deprivation be alleged and proved. A conspiracy standing alone is insufficient. *Id.* (citing *Dixon v. City of Lawton,* 898 F.2d 1443, 1449 (10th Cir.1990)). The Court finds that the allegations contained in the Second Amended Complaint are sufficient to state a cause of action for conspiracy under § 1983 against the Cromwell Defendants, Oakland County Circuit Judge Elizabeth Pezzetti, and Clinton County Circuit Judge Lisa Sullivan (vice Judge Marvin Robertson).

The Smith Plaintiffs allege a conspiracy to deprive them of their substantive due process rights. However, as noted below, when examining the Smith Plaintiffs' claims under the instant Motion to Dismiss pursuant to the *Rooker–Feldman* doctrine, the Court must look as well to the relief sought by the Smith Plaintiffs, as part and parcel of the totality of the allegations in the Second Amended Complaint. *Hood,* 341 F.3d at 597. Specifically, the Smith Plaintiffs allege:

> A conspiracy existed, and continues to exist, which included, but was not limited to, Defendant Cromwells, their counsel, Defendant Oakland Court, Defendant Clinton Court, FIA Director Bowler, and FIA Legal Affairs Director Michael, which was designed and intended to ignore and treat as irrelevant Plaintiffs' Petition for Adoption in Clinton County and to circumvent MCI Consent to Adoption and Defendant Robertson's March 17, 2003 Orders of Adoption by filing a different Petition for Adoption in Oakland County without the knowledge or participation of Plaintiffs, their children, or GAL Birch knowing that the newly appointed FIA Director would not defend and would, in fact, default on Defendant Cromwells' Section 45 Motion, all while having knowledge that Plaintiffs were the legal parents of their children, Lili and

Elizabeth, pursuant to the March 17, 2003 Orders of Adoption.

(Second Amended Complaint, pgs. 22–23, ¶ 98).

The Court notes that discovery has not yet taken place in this case. The Court further notes that thus far, Defendant Oakland County, has refused, on grounds of confidentiality, to provide this Court with a copy of the Oakland County Rule 45 Motion hearing transcript, or a transcript of the pre-motion conference if there was one, despite this Court's commitment to examine these materials *in camera* to protect confidentiality. These materials are relevant to the Smith Plaintiffs' claims, and the refusal to provide them to the Court for confidential *in camera* review prevents the Court from determining whether the hearing that took place did in fact not violate the Smith Plaintiffs' rights. Thus, at this stage of the proceeding, taking the evidence in the light most favorable to the non-moving party, the Court will not dismiss the Smith Plaintiffs' Conspiracy Claim.

Therefore, the Court denies the Cromwell Defendants', Oakland County Circuit Judge Pezzatti's, and Clinton County Circuit Judge Sullivan's (vice Judge Marvin Robertson) Motion to Dismiss the § 1983 claims presented in the Second Amended Complaint.

### E. Abstention

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court advised federal courts to abstain from deciding a matter that would be properly before them but for the pendency of state criminal proceedings in the matter. *Tesmer v. Granholm,* 333 F.3d 683, 688 (6th Cir.2003)(citing *Younger,* 401 U.S. at 43–45, 91 S.Ct. 746) Cert. granted January 20, 2004. The Supreme Court has, since *Younger,* extended this rule to cover state civil proceedings if the state's interest in its pending proceedings is so important that the exercise of the federal judicial power would disrupt the comity between the federal and state government. *Nilsson v. Ruppert, Bronson & Chicarelli Co.,* 888 F.2d 452, 454 (6th Cir.1989)(citing *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)).

The Sixth Circuit has held that three criteria must be met in order to apply the *Younger* doctrine: (1) that state proceedings are pending; (2) that the state proceedings involve an important state interest; and (3) that the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims. *Id.* (citing *Parker v. Commonwealth of Kentucky Bd. of Dentistry,* 818 F.2d 504, 508 (6th Cir.1987)).

In this case, it is clear that state adoption proceedings are pending in the Oakland County Circuit Court. The state proceedings involve adoption, which is an important state interest. It is the third factor of the *Younger* abstention test on which the current case must turn.

A federal plaintiff arguing that he had an inadequate opportunity to raise constitutional claims in state court "has the burden to show that state procedural law barred presentation of [his] claims." *Tesmer,* 333 F.3d at 690 (quoting *Armco, Inc. v. United Steelworkers of Am.,* 280 F.3d 669, 682 (6th Cir.2002)). Additionally, it is beyond peradventure, that the state court judge(s) must have provided a party with an opportunity to present the claim. That is the issue here.

If the plaintiff had an opportunity to present his federal claim in state court proceedings, a federal court should not exercise jurisdiction over the claim. *Id.* (citing *Moore v. Sims,* 442 U.S. 415, 425, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). Conversely, if authority clearly shows that

state law or the state judge barred the presentation of the constitutional claims in state court, abstention is not appropriate. *Id.* (citing *Moore,* 442 U.S. at 425–26, 99 S.Ct. 2371; *Pennzoil,* 481 U.S. 1, 107 S.Ct. 1519)).

█ In this case, the Court finds that the Smith Plaintiffs did not have an opportunity to present their federal claims in state court. First, as parents of the two children, they were not noticed and did not appear in the Oakland County Court. Second, as parents of the two children, they were not noticed and did not appear in the Clinton County Court. Thus, the Smith Plaintiffs have yet to be granted a hearing in a state court on their claim that their children were improperly taken away from them without notice or a hearing. Time and again, the Smith Plaintiffs sought a state court hearing on the taking of their children, and they never received that hearing. After Judge Robertson entered his April 17, 2003 order, the Smith Plaintiffs appealed to the Michigan Court of Appeals. That court dismissed the appeal, stating:

> The April 17, 2003 order, which vacated an earlier order of adoption and then abdicated jurisdiction to the family division of Oakland Circuit Court, did not determine the ultimate issue of adoption of the two children. Even though Oakland Circuit Court has indicated a future intent regarding adoption, no final order of adoption has actually been entered. The Clinton County circuit court order is akin to an order changing venue, which is not a final order under MCR 7.202(7)(a)(i).

(Defendant Clinton County Court's Motion, Ex. 2). Thus, the Michigan Court of Appeals refused to consider their claims, much less rule on them. The Smith Plaintiffs proceeded to file numerous appeals, motions for rehearing and reconsideration, and motions for superintending control. (Tr., p. 51).

The Smith Plaintiffs filed a belated motion for a Section 45 hearing in Oakland County Circuit Court on July 7, 2003, along with petitions for adoption of the minor children. Defendant Hon. Martha Anderson, without holding a hearing, dismissed the Smiths' "Section 45 motion as untimely and dismissed the petitions for adoption for failure to attach a valid consent form." This ruling does not undermine the Smith Plaintiffs' due process claim. The belated motion by the Smith Plaintiffs was not a substitute for the holding of a hearing, prior to the taking of the Smith Plaintiffs' children.

In sum, the Court finds that state proceedings, involving important state interests, are currently ongoing. The Smith Plaintiffs have not received any rulings on their constitutional claims in state court. Thus the third element for *Younger* abstention has not been established. This Court denies Defendants motions to dismiss the Smith Plaintiffs' claims under § 1983 on the ground of abstention.

## F. Anti–Injunction Act

█ Defendants further claim that, even if the action was not barred by the *Rooker–Feldman* and *Younger* doctrines, it would nevertheless be barred by the Anti–Injunction Act, 28 U.S.C. § 2283, which states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

22 U.S.C. § 2283. Defendants argue that the Second Amended Complaint, though couched in terms of a declaratory judgment action, is in effect an action to stay

proceedings in the Oakland County Court and, therefore, is barred by § 2283.

The Court finds that, even if it accepts Defendants assertion as true, the action is still maintainable. The Supreme Court has held that § 1983, under which the Second Amended Complaint is brought, is an exception to § 2283 explicitly authorized by Congress:

> The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' *Ex parte Virginia*, 100 U.S., [339] at 346, 25 L.Ed. 676 [(1879)]. In carrying out that purpose, Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress... § 1983 is an Act of Congress that falls within the 'expressly authorized' exception of [§ 2283].

*Mitchum v. Foster*, 407 U.S. 225, 242–43, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Accordingly, because the Second Amended Complaint was brought pursuant to § 1983, the Anti–Injunction Act does not mandate its dismissal.

### G. Title 42 U.S.C. § 1985

The Smith Plaintiffs' claim of a conspiracy to deprive them of civil rights also alleges a violation of 42 U.S.C. § 1985, an independent right of action separate and distinct from that of § 1983. Title 42 U.S.C. § 1985 states in pertinent part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

■ Defendants argue that, upon its face, the statute applies only to violations of the Equal Protection Clause, rather than the Due Process violations which the Smith Plaintiffs allege. The Court agrees. Title 42 U.S.C. § 1985 does not encompass conspiracies to deny due process. *See Bedford v. Southeastern Pennsylvania Trans. Authority*, 867 F.Supp. 288, 294, n. 5 (E.D.Pa.1994)(citing *Dunn v. New Jersey Transit Corp.*, 681 F.Supp. 246, 251 (D.N.J.1987); *Beacon Syracuse Associates v. City of Syracuse*, 560 F.Supp. 188, 200 (N.D.N.Y.1983)).

The Smith Plaintiffs' Second Amended Complaint mentions equal protection violations on page 17, the heading states "Due Process/Equal Protection Violations." On Page 23, it states:

> 100. Defendants, individually and together, deprived Plaintiffs and their adopted children the same rights and privileges provided to biological parents and their children."

However, the Second Amended Complaint, does not allege any facts relating to any conduct differentiating between those two classes of persons that would support such a violation. Accordingly, the Court grants Defendants' motions to dismiss the Smith Plaintiffs' § 1985 claims.

## H. Habeas Corpus

Finally, Defendants argue that the Smith Plaintiffs' habeas corpus claim should be dismissed because the Court has already ruled that habeas corpus is inapplicable to the current situation. The Court agrees. The Court entered an Order on March 29, 2004, dismissing Count IV of the First Amended Complaint (Habeas Corpus). The same principles apply to the Habeas Corpus claim brought in the Second Amended Complaint. Accordingly, the Court grants Defendants' motions to dismiss the Habeas Corpus claim.

## CONCLUSION

For the reasons stated above, the Court:

(1) GRANTS Defendants Oakland County Circuit Court's Motion to Dismiss;

(2) GRANTS Defendant Oakland County Circuit Judge Martha Anderson's Motion to Dismiss insofar as there is no evidence indicating that her conduct violated the Smith Plaintiffs' due process rights under the U.S. Constitution;

(3) DENIES Oakland County Circuit Judge Elizabeth Pezzetti's Motion to Dismiss;

(4) GRANTS Defendants Clinton County Circuit Court's Motion to Dismiss;

(5) DENIES Clinton County Judge Lisa Sullivan's (vice Judge Marvin Robertson) Motion to Dismiss

(6) DENIES the Cromwell Defendants' Motion to Dismiss.

**SO ORDERED.**